27 441
32 748

---

STATE OF NEBRASKA, EX REL. WILLIAM A. FULLER ET AL., V. ELISHA L. MARTIN, MAYOR OF FAIRMONT.

[FILED OCTOBER 3, 1889.]

1. **Municipal Corporations:** POWER TO APPROPRIATE MONEY. The provisions of section 86, article 1, chapter 14, Compiled Statutes, limiting the power of the city council to appropriate money to the annual appropriation bill and to such sums as in the aggregate shall not exceed the amount of tax authorized to be levied during that year, *held*, not to apply to money authorized to be borrowed by such city for a specific purpose and where a proposition to apply the same thereto has been sanctioned by a majority of the legal voters of such city, either by a petition

signed by them, or at a general or special election duly called therefor.

2. ———: COMPROMISE OF CLAIMS. The power to compromise and settle claims of the nature and character of that involved in the case at bar, *held*, to exist in the mayor and city council of cities in their legislative capacity growing out of their general corporate powers, and the necessities of such cases.

3. ———: DUTIES OF MAYOR. The mayor is the chief executive officer of the city, and as such it is his duty to see to the execution of all active ordinances, resolutions, and votes of the mayor and council whether, as a matter of opinion or sentiment, the same meet his approval or not.

ORIGINAL application for mandamus.

*C. E. Magoon*, and *Mason & Whedon*, for relators.

*Robert Ryan (J. H. Rushton* with him), for respondent.

COBB, J.

This is an original application by the State, on the relation of William A. Fuller and others, partners under the firm name of Palmer, Fuller & Co.; Nathan H. Warren and others, partners under the firm name of N. H. Warren & Co.; William P. Fairbanks and others, partners under the firm name of Fairbanks & Co., and John Lanham, for a peremptory writ of mandamus to be issued to Elisha L. Martin, mayor of the city of Fairmont, Fillmore county, respondent.

On January 30, 1888, the relators served sufficient notice on the respondent that on February 17, following, at 9 A. M., the relators would move the court for the issuance of a peremptory writ of mandamus, compelling him as mayor of said city to sign a certain warrant for the sum of $6,500, theretofore on September 5, 1887, voted by the common council of said city, and prepared and issued by the clerk of said city in full settlement of the claim of the relators against said city by reason of the construction of

the water works in and for said city; in support of which motion there was presented the affidavit of Charles E. Magoon, Esq., one of the attorneys for the relators, that each one of the relators was absent from Lancaster county, Nebraska, and that affiant makes the affidavit for that reason, showing:

1. That the respondent is mayor of said city, duly elected and qualified and discharging the duties thereof.

2. That on July 22, 1885, said town was a village duly organized under the laws of this state; that there was duly submitted a proposition to the voters for the issuing of bonds of the village in the sum. of $10,000 for the construction of water works; that said proposition duly carried at a special election in conformity to law, and the bonds were issued, registered, and sold, and the proceeds deposited in the National Bank of Fairmont, where they now remain; that by reason of the increase of population said village became a city of the second class having less than 5,000 inhabitants. That on July 22, 1885, said village contracted with Ira E. Williams for the construction of its water works, in accordance with plans and specifications furnished by him, and in the custody of the clerk of said village, and in accordance with the proposition published in the Fairmont *Signal.*

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

5. That when the water works shall have been completed, and the contractor ready to turn them over to the village, the whole system should be tested by the chairman and board of trustees of the village, according to a test of capacity; provided: the whole system to be constructed in a good and workmanlike manner, to be completed by November 15, 1885.

In consideration of which the contractor should be paid by said village $8,916, as soon as the system of water works should be tested and accepted by the chairman and board of trustees of the village.

On August 11, 1885, the contractor, for the considera-
tion of $2,000, sold and assigned his interest in the con-
tract to James Peabody, who on March 4, 1886, sold and
assigned his interest to the firm of N. H. Warren & Co.
That on October 4, 1886, N. H. Warren & Co. sold and
assigned their interest to Palmer, Fuller & Co., the relators,
who now own the contract and who are entitled to all
the rights and benefits arising therefrom; that said works
were duly constructed by the various parties interested in
the contract, each contributing large sums, amounting in
all to $17,200; that Ira E. Williams and James Peabody,
by reason of their contributions, became bankrupt and in-
solvent; that N. H. Warren & Co. expended large sums,
and that Palmer, Fuller & Co. furnished all the material
used in the pipes, towers, tanks, and engine houses in said
system; that Fairbanks & Co. furnished all the hydrants,
engines, pumps, valves, etc., in the construction, and John
Lanham dug the wells of the same; that the works were
turned over to the city of Fairmont in September, 1886,
and by the council duly tested, and have been in use hith-
erto, and the water sold to consumers by the city, which
has received a large amount of money therefrom; that the
city has expended large sums in improving and extending
the system, and has never paid the contractor, or his
assignees, any sum whatever for the construction of it;
that on October 25, 1886, the relators proposed to the city
council to turn over their contract to the city and save the
city from all liability for the construction of the works and
pay all existing liens for the sum of $6,500, which propo-
sition was accepted; and in pursuance of which, the city
council on September 4, 1887, voted to allow the city war-
rant to be issued for said sum in payment of the water
works, by a vote of three to one, or a majority of three-
fourths of the city council; that the warrant was duly
drawn, and signed by the city clerk, according to law, and
presented to the respondent, the mayor of said city, for his

signature as such on September 5, 1887; and said respondent failed and neglected, and still refuses, to sign the same, and that such refusal is without justification in law.

That the relators being without remedy, unless it be by the interposition of the supreme court, therefore pray that a peremptory writ of mandamus issue to the mayor of Fairmont commanding him to sign said warrant, etc.

The answer of Elisha L. Martin, respondent, denies each averment of the relators not specifically admitted to be true.

II. He admits that he is mayor of the city of Fairmont, duly elected, and qualified, and exercising the duties of the office, and admits that the city was a village under the laws of the state; that the proposition for bonds in $10,000 for the construction of water works was carried at a special election, and as a part of the proposition the question of authority to levy a tax to pay the interest on the bonds, but not the principal, was carried, by reason of which the bonds were not duly issued.

He admits that the village of Fairmont has become a city of the second class of less than 5,000 inhabitants; that on July 22, 1885, the contract set out by the relators was entered into between Ira E. Williams and the village of Fairmont, but avers there was no compliance on the contractor's part with the terms and undertakings of his contract, nor was there of any person claiming under, by, or through him; that the works have never been tested or accepted by the village, now the city of Fairmont; that by reason of the failure to perform his undertakings under said contract, and of the failure of those undertaking on behalf of Ira E. Williams, there is nothing due the relators who claim as assignees of the contractor; that it was provided "that the whole of said sum of $8,916 is to be paid as soon as the system of water works shall have been tested and accepted by the city of Fairmont," and nothing before; therefore respondent is under no obligation to sign the warrant mentioned, or to do any act by which the relators,

or those claiming under the contractor, shall receive said sum, or any other sum, from the city of Fairmont.

He admits that the city of Fairmont paid Joseph Burns $1,200 for his efforts to secure an adequate supply of water, because the contractor, and the relators claiming under him, and his assignment of the contract, had failed to furnish the supply guaranteed by the contract, and had refused to comply with the terms of the contract; and that the expenditure to Burns has not produced an adequate supply and is entirely a loss.

He denies that the city of Fairmont in any way accepted the system of water works, or assumed control over it as upon full compliance with the terms of the contract, or in any other manner, or for any other purpose whatever.

He avers that the relators' application is insufficient in law, that it makes no averment of their compliance, or that of their assignor, with the requirements of the contract, nor does it aver that the city of Fairmont has in any manner accepted the water works.

He says, as to the proposition submitted to the city council, and the action thereon, there was no authority in law for the same; that the sole action of the city council in respect to the alleged arrangement, by which a mandamus is sought, was:

March 17, 1886, the adoption of the following:

"WHEREAS, I. E. Williams, contractor for the Fairmont water works, and James Peabody, assignee, are indebted to Palmer, Fuller & Co., of Chicago, Ill.; Fairbanks & Co., St. Louis, and John Barsby, of Fairmont, for material furnished in the construction of said water works, and labor performed as an attorney in connection therewith, and have given orders on the board for the several sums due: therefore, be it

"Resolved, That when the water works are completed and accepted, and the bonds sold and the money placed in the treasury, that the city treasurer is hereby instructed to

reserve from the contract price of the water works the sums due said parties and charge the same against the contract of I. E. Williams and pay the same to the parties entitled thereto."

October 8, 1886, at a special meeting of the council, the following proceedings were had:

"A proposition was made by Attorney C. E. Magoon to transfer all the title to the city of Fairmont of the city water works as they now stand at $7,000.

"Motion made and seconded that the proposition be received, the works examined, and that the council meet at 10 A. M., October 9, 1886, to finish the business now in hand, which was carried."

October 9, 1886, the council met, pursuant to adjournment, and the following proceedings were had:

"It is moved and seconded that the council accept the city water works, as they now stand, at $6,500, which was agreed to."

"It was moved and seconded that the council give the companies two weeks from the following Monday (October 11th) to accept or reject the proposition of the council, which was agreed to, a majority voting in favor of the motion."

October 25, 1886, the following proceedings were had in the city council of Fairmont, to-wit:

"Charles E. Magoon then accepted the proposition made by the city council for the Fairmont water works at sixty-five hundred dollars ($6,500) on October 9. This in writing as follows:

"'To the Honorable Mayor and City Council of the City of Fairmont, Nebraska—GENTLEMEN: We hereby notify you of our acceptance of your proposition of October 9, '86, to accept the system of water works constructed under the contract of the town of Fairmont with Ira E. Williams of date July 22, 1885, at the sum and for the consideration of six thousand five hundred dollars ($6,500).

Said works to be free and clear of all liens and incumbrances, including engine in west engine house and all extras and additional pipes and material for repairs now on hand.

"Dated at Fairmont, Nebraska, October 25, '86.

"WARREN & Co.,
"PALMER, FULLER & Co.,     Each  by  CHAS. E. MA-
"JOHN LANHAM,              GOON, their attorney."
"FAIRBANKS & Co.,

September 5, 1887, the following proceedings were had by the city council:

"It was moved and seconded that an order be drawn on the water fund for the ·sum of $6,500, in favor of Charles E. Magoon, attorney, in payment for the system of city water works: said sum to be paid in pursuance of the agreement made October 9, 1886, which was agreed to."

September 24, 1887, there was drawn upon the respondent the following:

"Hon. E. L. Martin, mayor of Fairmont, Neb.: When the water works of the city are to be paid for please deduct from amount to be paid creditors the sum of $500, which is my due as attorney for said creditors, and which is guaranteed by the city when said payment shall be made, and pay the same to Irwin B. Chase, and this shall be my receipt as against said creditors and the city.

          "(Signed)          JOHN BARSBY."

Upon the above facts, on which the relators' application rests, and other intrinsic facts known to respondent, respondent denies that he is under obligation to sign said warrant or order, and answers it would be in violation of his duty so to do, because at the time of the agreement entered into, October 25, 1886, between the city council and C. E. Magoon, as attorney, for the payment of $6,500, the mayor, John Barsby, had an interest in the transaction to the amount of $500, and that a member of the council who voted in the affirmative on the proposition to pay

$6,500 had an interest, on some account unknown to respondent, of $100, and that another member who voted in the affirmative on the proposition was in the employ of a firm interested in the payment of said sum of $6,500, and therefore, and particularly by reason of the interest of the mayor and the councilmen, contingent upon the payment of said amount, the contract to pay the same by the city of Fairmont was void, under sec. 68, chap. 14, Comp. Stats. of this state.

He further says that the proposition stated by the relators was to turn over the contract of July 22, 1885, to the city, relieving the city from all liability from construction and pay all existing claims and liens upon said works, but that the resolution adopted was that an order be drawn for $6,500 in payment of the water works, therefore there was no binding force in the resolution, and no sufficient consideration for the city warrant or order ; that the city has no power under the statute to purchase contracts, therefore the relators' proposition, even if accepted, has no binding force against the city.

That the works are mortgaged to the amount of $1,751 to one of the relators, and are subject to mechanics' and other liens, unknown to respondent, and not released.

That no appropriation was made by ordinance, or otherwise, for the payment of warrants or orders which, by *mandamus*, respondent is sought to be compelled to sign ; and that no appropriation for that purpose has ever been made or is now in existence, therefore no obligation devolves on respondent to sign warrants or orders for the payment of said sum of $6,500 or any part thereof.

That the resolution by said council directed the issue of warrants or orders to C. E. Magoon, attorney, without requiring any delivery or conveyance of the water works system, and the application of the relators makes no showing why a warrant or order should issue to Chas. E. Magoon, attorney.

29

Respondent says that by the terms of the agreement of the city of Fairmont with I. E. Williams, his undertakings were to be completed November 15, 1885, which were not done, therefore the arrangement to pay $6,500 under the proposition of October 25, 1886, nearly one year after the time for the full performance of the contract had elapsed, was wholly without consideration, and was void; that the bonds voted July 22, 1885, were voted to enable the village of Fairmont to perform its contract with I. E. Williams, and for the payment of nothing but the system of water works that day contracted for with said Williams, and that the proceeds are a fund to be devoted to no other use than the payment of water works fully constructed, tested, and accepted under said contract; that the attempt to pay $6,500 for works not constructed, but which were to have been constructed, for which $8,916 would have been due, is an attempt to make a new and different contract from that of July 22, 1885, and with respect to carrying out such attempt and such substituted contract respondent is vested with a judicial discretion, therefore his action cannot be controlled by *mandamus*.

That as shown by the averments of relators' application N. H. Warren & Co. sold and assigned their interest to Palmer, Fuller & Co., who are sole owners of the contract and all benefits thereunder by assignments of Ira E. Williams; that the interest of other relators is based upon the alleged fact that N. H. Warren & Co., Fairbanks & Co., and John Lanham have furnished materials, work, and labor to carry out the undertakings of the contractor Williams and his assignees, against whom, and not the city of Fairmont, their claims should be prosecuted; that the issue of city warrants for the payment of money to C. E. Magoon, as attorney for said last named relators, is wholly without warrant of law, and they have no right to prosecute this action, and as there is no distinguishing the amount due each relator respectively, the proceedings must fall.

That as to whether they, or any of them, have filed a claim for mechanic's or materialman's lien, and whether others claiming such liens had filed the same, respondent is not informed, nor does he know whether any claims for liens have been released against said water works.

That relators be adjudged to be entitled to no relief, and their cause of action be forever barred.

The stipulation of the parties to this application, filed April 8, 1889, as to certain issues of fact is as follows :

" It is hereby stipulated and agreed by and between the parties to this action that the warrant, on which this application is made to compel the mayor of the city of Fairmont to sign, was drawn in due form as provided by law, and was duly signed by the city clerk of the city of Fairmont ; that the same was presented to Elisha L. Martin, for his signature, and that he refused to sign the same.

" That the original contract entered into by the city of Fairmont for the erection of said water works herein involved has been duly assigned to the firm of Palmer, Fuller & Co., as one of the relators herein ; that there has been expended under said contract for the erection of said works the sum of $17,500 ; that Elisha L. Martin was at the commencement of this action mayor of the city of Fairmont. This stipulation is made for the purposes of this action alone.

"CHAS. E. MAGOON, *Attorney for Relators*.

"ROBT. RYAN, *Attorney for Respondent.*"

The first objection argued by respondent's counsel, in the brief, is that there is no averment by the relators, or proof submitted with their application, that any appropriation had been made from which the warrant mentioned could be paid, even had it been signed by the mayor. To the support of this proposition is cited section 86, article 1, chapter 14, of Compiled Statutes, and the reported case of *City of Blair v. Lantry*, 21 Neb., 247.

The section cited provides that :

" The city council of cities, and board of trustees in villages, shall, within the first quarter of each fiscal year, pass an ordinance, to be termed the annual appropriation bill, in which such corporate authorities may appropriate such sum or sums of money as may be deemed necessary to defray all necessary expenses and liabilities of such corporation, not exceeding in the aggregate the amount of tax authorized to be levied during that year; and in such ordinance shall specify the objects and purposes for which such appropriations are made, and the amount appropriated for each object or purpose. No further appropriations shall be made at any other time within such fiscal year, unless the proposition to make each appropriation has been first sanctioned by a majority of the legal voters of such city or village, either by a petition signed by them or at a general or special election duly called therefor ; and all appropriations shall end with the fiscal year for which they were made."

The money which this section requires to be annually appropriated, as a condition precedent to its being drawn from the city treasury, is the money raised, or authorized to be raised, by taxes " to be levied during that year." This is obvious from the language of the first clause of the section, but were it doubtful as to its construction, and its being limited to such moneys, the doubts would be put to rest by the language of the second clause, " unless the proposition to make each appropriation has been first sanctioned by a majority of the legal voters of such city or village."

Where a proposition to borrow money for any lawful purpose has been submitted to a vote of the people of a city or village, the proposition carried, the money borrowed and placed in the treasury, such money is appropriated for the purpose intended, and is subject to the control and disposal of the mayor and council of the city, or the president and board of trustees of the village, within

the purview of the appropriation, without an ordinance such as is required to be passed in the section cited.

As further applicable to the question, I quote from the respondent's brief that:

"The proposition voted upon May 25, 1885, was this: 'Shall the chairman and the board of trustees of the village of Fairmont * * have power to borrow money and to pledge the property of said village of Fairmont upon its negotiable bonds to an amount not exceeding ten thousand ($10,000) dollars for the purpose of constructing, maintaining, and operating a system of water works for the said village of Fairmont and to levy a tax on the taxable property of said village of Fairmont, in addition to all other taxes, sufficient to pay the interest on said bonds as they may become due and payable.'"

And also the following from the same brief, which is there stated to be section 4 of the proposition adopted by the electors of the village of Fairmont, to borrow money "for the purpose of constructing, maintaining, and operating a system of water works," submitted after the adoption of the plans of Ira E. Williams, which, so far as the record shows, is the only system of water works ever adopted or contemplated by said city:

"That the proceeds of the sale of said bonds shall be paid to the treasurer of the said village of Fairmont immediately on the sale thereof and shall be by said treasurer placed to the credit of the 'water fund.' Said bonds shall be denominated 'Water Bonds,' first series. The money obtained therefor shall be used for the purpose hereinbefore specified and the necessary expenses connected therewith, and for no other purpose."

The precedent cited by respondent, of the *City of Blair v. Lantry,* was an action involving an act of the mayor and council of that city in purchasing certain land for the enlargement of the cemetery and paying therefor out of the cemetery fund without an appropriation for that purpose.

It was there held that the money belonging to the cemetery fund could not be used by the city council in the purchase of additional grounds without an appropriation, or without a proposition for the expenditure having been sanctioned by a majority of the legal voters of the city. In the case at bar such sanction was given; the loan and the expenditure of the money involved having been approved by a majority of the legal votes of the city, it is not within the rule and authority of that case.

From the pleadings and evidence, and the stipulation of the parties, it sufficiently appears that the city of Fairmont, then village, on July 22, 1885, contracted with Ira E. Williams for the erection of the system of water works specified by his plans, previously adopted, for the sum of $8,916; that the work was undertaken and prosecuted to some state of completion; that the contract, together with all rights and expenditures under it, and claims for compensation therefor, was assigned by Williams, and by *mesne* conveyance to the relators; that for the purpose of paying for the erection of water works and for the incidental expenses thereof the people of the village, now city, voted to borrow $10,000 by the issuance and conversion of negotiable bonds to that amount; that in the erection of the water works the contractor and his assignees, the relators, expended the sum of $17,500; that the works were not completed within the time provided; that two or more extensions of the time were made to the contractor or his successors, respectively, carrying on the work for the purpose of overcoming unexpected difficulties in completing it; that on October 8, 1886, a proposition was made by the relators, through their attorney, at a meeting of the mayor and city council, to "transfer all the titles to the city of Fairmont of the city water works as they now stand" at $7,000. This proposition was received and considered at an adjourned meeting of the mayor and city council October 9, 1886, "to finish the business now in hand," and it

was agreed to "accept the water works as they now stand" at the sum of $6,500. This proposition was carried by a vote of three-fourths of the council affirmatively, and two weeks were allowed the companies (meaning the relators) to accept or reject the proposition. On October 25, following, at a regular meeting of the mayor and city council the relators, through their attorney, accepted the terms proposed in the formal writing herein set forth. The public contract of the parties to this proceeding was then complete. It was further resolved, by the council, "that due notice be given for proposals for the purchase of $10,000 in water bonds, the time to receive the same to be limited to December 1, 1886, at 7 o'clock P. M., the proposals to be sealed and filed with the city clerk, and the council reserve the right to reject any or all bids, the bonds to be redeemable at the fiscal agency of Nebraska, in New York city, according to statute," also that a select committee of the mayor and two councilmen, named, attend to the same.

On September 15, 1887, at a regular meeting of the mayor and council it was resolved that an order be drawn on the water fund for $6,500 in favor of Chas. E. Magoon, attorney, in payment for the system of city water works, said money to be paid in pursuance with the agreement made October 9, 1886.

These regular proceedings, in conformity to law, clearly show that the water works were accepted, and agreed to be paid for, by the mayor and council of the city of Fairmont, as a compromise of public indebtedness and obligation. The works were not completed, as to time, according to contract; whether in the manner contracted does not appear from the record.

While I am not aware that express authority is given to cities, or to the mayor and council, as legislators, to settle claims of this nature by compromise, yet the power of settlement and adjustment must be held to exist, and to grow out of their general corporate powers and the absolute necessities of the case.

In all questions of city legislation the mayor is co-equal with the council, with power to veto enactments; but necessarily content under an affirmative two-thirds vote of the council.   If a measure passes the council by a majority of its members and the mayor fails to interpose an objection, he is held to concur.   If he shall interpose, it is competent for the council, upon reconsideration, to pass it by a two-thirds vote of all, when it becomes an act, or ordinance, notwithstanding his disapproval.  But in all executive duties the ordinances, resolutions, and votes of the mayor and council, whether passed with the concurrence of the mayor, or notwithstanding his objections, being the executive officer, he is obliged to execute the duties irrespective of his sanction or his disapproval.

The voters of Fairmont having taxed themselves and appropriated the money for a system of water works, and the city council having provided for the sale and conversion of the bonds issued in pursuance of such action and authority and for placing the proceeds in the water fund of the city treasury, and a year having elapsed, it must be presumed that the money was still in the treasury when the warrant, drawn in pursuance of the action of the mayor and council to pay the relators the sum of $6,500 in full for the water works, was presented to the mayor for his signature.

It was therefore his imperative duty to have signed the warrant; but having neglected and refused to perform that duty, the state's writ of *mandamus* will issue to enforce it upon him.

WRIT ALLOWED.

THE other Judges concur.