N. C. PHILLIPS v. W .B. REED, TREASURER, Appellee.

**Constitutional Law:** WARRANTS IN ANTICIPATION OF REVENUE. Where a city had on hand or in prospect, at the time warrants exceeding the prescribed limit of indebtedness were issued, funds
1  with which to meet them without trenching on the rights of creditors for current expenses, such warrants are valid, although such funds may have been thereafter wrongfully applied to other things.

ORDER OF PAYMENT. Code of 1897, section 668, subdivision 16, provides that cities of the first class shall make their appropriation for all expenditures for each fiscal year at, or before the beginning
2  thereof, not to exceed its annual authorized revenue, but may anticipate its revenue for the year, or bond or refund the outstanding indebtedness. Section 898 provides that loans may be
3  negotiated or warrants issued by any municipal corporation in anticipation of its revenues for the fiscal year in which such loans are negotiated or warrants issued, the aggregate not to
4  exceed the estimated revenue for the funds or purpose for which the taxes are to be collected for such fiscal year. *Held,* that the income of each year must be used to pay debts of that year, to the

exclusion of prior warrants issued, presented for payment, and endorsed, "Unpaid for want of funds."

PRIORITIES. Code, section 660, providing that warrants when presented to the city treasurer, if not paid for want of funds, shall be endorsed by that officer with the date of presentation, and paid in order thereof, applies only as between warrants issued in a given year.

RULE APPLIED. The holder of a warrant presented and marked unpaid for want of funds, if made a preferred creditor under Code, 1897, section 660, providing that "Warrants shall be paid in the order of their presentation," cannot claim payment out of current funds in preference to the warrants issued for the current expenses in view of section 668, subdivision 16, requiring payment of current expenses from current funds, but may assert such priority as he may be entitled to against warrants for preceding years.

ROBINSON AND GRANGER, JJ., dissenting.

### SUPPLEMENTAL OPINION.

The question whether the terms of Chapter 4, Acts Twenty-second General Assembly, do not except the city of Council Bluffs from the operation of that statute was, following the argument of counsel, not decided, but it was assumed that the statute applied.

*Appeal from Pottawattamie District Court.*—HON. WALTER I. SMITH, Judge.

THURSDAY, OCTOBER 27, 1898.

SUPPLEMENTAL OPINION JANUARY 25, 1899.

ACTION to recover upon a warrant drawn on the general fund of the city of Council Bluffs, of which city defendant Reed is treasurer. A mandamus was asked, requiring the treasurer to pay said claim. To the petition a demurrer was interposed. The district court sustained the demurrer, and, the plaintiff electing to stand on his petition, his action was dismissed, and judgment rendered against him for costs. From this action of the court, plaintiff appeals.—*Reversed.*

*Mayne & Hazelton* for appellant.

*S. B. Wadsworth* for appellee.

WATERMAN, J.—Plaintiff alleges that he is the owner and holder of a warrant for the sum of six dollars and twenty-four cents drawn against the general fund of the city of Council Bluffs; that it was issued for supplies furnished said city during the year 1898; that refusal to pay said warrant was made by defendant, who is the treasurer of said city, although the current revenues of the year 1898 were amply sufficient to satisfy the same, the reason for said refusal being that there were outstanding warrants unpaid which bore earlier dates than the one in suit, and which had been duly presented for payment, and so indorsed. In an amendment to the petition it is alleged "that during the years 1895, 1896, and 1897, and particularly during the time the several contracts of indebtedness of said city for which the outstanding warrants issued prior to April 1, 1898, were made, said city of Council Bluffs was indebted to its full constitutional limit, and the outstanding warrants, for the payment of which defendant claims to hold the funds in his hands derived from the revenue of the city for the fiscal year commencing with April, 1898 were warrants issued to pay the necessary running expenses of the city for the fiscal years in which they were severally executed, and were drawn upon and in anticipation of the revenues of the said several years, and are not payable out of the revenues of the fiscal year beginning with April, 1898, until after the appropriations for the fiscal year of 1898 have been met." To this petition as amended a demurrer was interposed, upon the following grounds: (1) That defendant has no option, but must use the money received by him from city taxes for the payment of warrants heretofore presented, and indorsed by him "Not paid for want of funds." (2) Because warrants that have been so presented and so indorsed are thereby made preferred claims against the city. (3) That all money received into the city treasury for the respective funds must be paid out on warrants drawn on such funds in the order of the presentation of such warrants. (4) Because any other manner or method of paying warrants would be unconstitutional. (5) Because $104,-

250.04 in warrants were issued by the city of Council Bluffs for labor and material furnished said city, and the holders thereof presented the same to the treasurer of said city, and such warrants were by him indorsed "Not paid for want of funds" prior to the adoption of the Code of 1897.

II. If it appeared that the indebtedness, to the payment of which the satisfaction of plaintiff's warrant is sought to be postponed, was incurred in excess of the prescribed limit, and in violation of the inhibition of section 3 of article 11 of the constitution, the decision of this case would be a matter of no difficulty. It is true, the petition alleges that at the times when this indebtedness was contracted the city was in debt to the limit of the amount allowed. But it does not follow from this that the indebtedness as represented by these warrants was necessarily invalid. If the city had on hand or in prospect, at the time these warrants were issued, funds with which to meet them without trenching upon the rights of creditors for current expenses of the city, then the warrants were valid, although such funds may have been thereafter wrongfully applied to other purposes. This possible state of facts is not negatived by any allegation of the petition. On the contrary, the plaintiff not only does not charge that the indebtedness which is sought to be preferred to his claim is invalid, but in the amendment to his petition he distinctly recognizes its validity, and claims only that its payment should be deferred to the payment of the warrant sued upon. We have, then, this question to determine: Must a city pay current expenses from the revenues of the year in which they were incurred, to the exclusion of other valid prior indebtedness, for which warrants have issued, and been presented for payment, and indorsed as unpaid for want of funds? It seems to be conceded that, under the law as it existed prior to the last codification, the warrants were payable in the order of their presentment. But it is claimed by plaintiff that under the Code of 1897 a different rule prevails, and that now the current expenses of a municipality must first be

paid out of its current income, before any part of said income can be devoted to the cancellation of prior indebtedness. Our attention is called to certain provisions of the statute. Subdivision 16, section 668, Code 1897, is as follows: "In cities of the first class the council shall make the appropriation for all the different expenditures of the city government for each fiscal year at or before the beginning thereof, and it shall be unlawful for it or any officer, agent or employe of the city to issue any warrant, enter into any contract or appropriate any money in excess of the amount thus appropriated, for the different expenses of the city during the year for which said appropriation shall be made. Any such city shall not appropriate in the aggregate, an amount in excess of its annual legally authorized revenue; but nothing herein shall prevent such cities from anticipating their revenues for the year for which such appropriation is made or from bonding or refunding their outstanding indebtedness. * * *" Section 898 is in these words: "Loans may be negotiated or warrants issued by any municipal corporation in anticipation of its revenues for the fiscal year in which such loans are negotiated or warrants issued, but the aggregate amount of such loans and warrants shall not exceed the estimated revenue of such corporations for the fund or purpose for which the taxes are to be collected for such fiscal year." The manifest object of these provisions is to place municipal corporations upon a cash basis, and prevent the accumulation of such a floating indebtedness as appears in this case. In order to facilitate this return to a cash-paying system, of cities that were burdened with a floating debt at the time of the adoption of the Code, it is provided by section 905 that cities and towns may fund such indebtedness, and issue bonds therefor. Such action, it is true, is not made obligatory upon municipalities, but the power is given to so do. In thus seeking to compel the payment by municipalities of current expenses from current funds, the general assembly seemed to follow the action of other states in this respect. See statutes construed in

*Putman v. City of Grand Rapids,* 58 Mich. 416 (25 N. W. Rep. 330); *State v. Martin,* 27 Neb. 441 (43 N. W. Rep. 244). Section 18 of article 11 of the constitution of the state of California provides that "no county, city, town, township, board of education or school district shall incur any indebtedness or liability in any manner or for any purpose, exceeding in any year the income provided for it for such year, without the assent of two-thirds of the qualified electors." It was held in *Shaw v. Statler,* 74 Cal. 258 (15 Pac. Rep. 833), that, while this provision does not in express terms require that the income and revenue of each year be applied to the payment of the indebtedness of such year, yet by necessary implication it must be construed so to do. The statute of our state on this subject, which we have quoted, is more explicit in its terms than the provision of the California constitution; and we have no doubt of the legislative intent, by its enactment, to compel municipalities to pay the debts of each year from the income of that year.

III. We do not understand that counsel seriously question this construction, but it is asserted on behalf of appellee that section 660 of the Code was in force when the older warrants for which a preference is claimed were issued, and that its provisions form part of the contract with the warrant holders. This latter section relates to the duties of treasurers of municipal corporations. By its terms it is provided that warrants, when presented to the treasurer, if not paid for want of funds, shall be indorsed by that officer with the date of presentation, that he shall keep a record thereof, and that "all such warrants shall be paid in the order of their presentation." Section 660 of the Code, and what is now subdivision 16 of section 668, were enacted originally by the same general assembly. The first forms part of chapter 3, and the other of chapter 4, of the Laws of the Twenty-second General Assembly. Both were in force when the warrants were issued for which defendant claims a

preference of payment. We may for present purposes con-
cede that section 660 makes the warrant holder a preferred
creditor. *People v. Austin* (Colo. Sup.), 17 Pac. Rep.
485; *Taylor v. Brooks,* 5 Cal. 332. But it seems clear that
the provisions of section 668 also entered into the contract
with the creditor, or perhaps it might better be said that he
assumed such relation, subject to its terms. To give force
and effect ,as we undoubtedly should, to both of these statutes,
we must hold that the preference given to warrant holders by
section 660 applies only as between warrants issued in any
given year. This interpretation, we think, is supported by
the reasoning in *Shaw v. Statler, supra.* In that case a war-
rant holder sought to compel a county treasurer to cash his
warrant. We have quoted the constitutional provision which
was under consideration in that case, and which corresponds
in its terms to subdivision 16 of section 668 of our Code. At
the time Shaw received his warrant, there was also in force in
California a statute (section 77 of the county government
act) similar to our section 660. It provided, in substance,
that warrants should be paid "according to priority of time in
which they were presented." The holding in the case was
that, giving force and effect to both provisions, the statute
awarding preference of payment to warrants earliest pre-
sented must be held to "apply primarily as between the war-
rants of any given year." We do not perceive that any con-
stitutional question is involved in the case at bar, though
counsel devoted no little attention to the discussion of the
power of the general assembly to impair the obligations of the
contracts of the earlier warrant holders. The case is pre-
sented here as though subdivision 16 of section 668 was
enacted after the creditors' rights had accrued under section
660. This, we have seen, is not the case. All of the war-
rants for payment of which defendant seeks to retain the
funds in his hands were issued prior to 1898, and it is mani-
fest from what we have said that the holders thereof have no
claim upon the revenues of that year,—at least, until after

current debts have been paid. The question as to what the rights and remedies of these older warrant holders may be is not before us. It is not out of place, however, for us to say that, if these claims are valid, they can doubtless be put in judgment, and collected by proper process. Plaintiff was entitled to the writ of mandamus for which he prays. The judgment of the district court is therefore REVERSED.

ROBINSON, C. J. (dissenting).—I do not find in subdivision 16 of section 668 of the Code any language which necessarily requires the revenues of cities of the first class to be devoted exclusively to the payment of the expenses of the year in which the revenue is obtained, before other debts can be paid therefrom. The subdivision was undoubtedly designed to prevent expenditures, by cities of the class designated, in excess of their revenues; and when its provisions are complied with, and there is no outstanding indebtedness incurred in previous years, such cities will be kept on a cash basis, as contemplated by the statute. The appropriations required to be made at the beginning of each fiscal year are the formal setting apart of certain sums of money for designated purposes, and the sums thus designated fix the maximum amounts for which warrants may be issued for the purposes designated. But those appropriations are made in advance of the receipt of the money appropriated. The actual appropriations are made when claims are audited, and warrants therefor are authorized; and the statute does not in terms require that such warrants be paid only from the money appropriated formally at the beginning of the fiscal year. Section 660 of the Code requires the treasurer of cities and towns, "when a warrant drawn on the treasury is presented for payment and not paid for want of funds," to "endorse the fact thereon, with the date of presentation, and sign it." The section further provides that the treasurer "shall keep a record of all warrants drawn on the treasury and presented, * * *" and that "all such warrants shall be paid in the order of their presentation." There is no suggestion in the

section that warrants are to be registered by the year, and paid from the revenues of the year in which they are authorized. The language is sweeping, and includes "all such warrants"; that is, all warrants presented for payment, and not paid for want of funds, and which have been duly indorsed and registered, and all such warrants are to be paid "in the order of their presentation." Those provisions apply, not merely to cities of the first class, but also to all other cities, and to towns; and it will hardly be claimed that warrants issued by such other cities and towns must be registered by the year, and paid only from the revenues derived from the year in which they were issued. But, under the opinion of the majority, the section must receive two different interpretations,—one for cities of the first class, and another for other municipalities. No reason is suggested, and none can be readily imagined, unless found in the statute, for requiring an application of the sections to cities of the first class not authorized for other cities and towns. Reference is made to sections 905 of the Code, as though that were a new provision of law, enacted, in view of the adoption of subdivision 16 of section 668, for the purpose of facilitating the return of cities of the first class to a cash basis. But the powers thereby conferred are not new, and the larger part, if not all, of them had been given by prior legislative acts, some of which were in force before subdivision 16 and section 660 were enacted in their original form. According to well-established rules of interpretation, both of the statutes last referred to should be so construed as to give force and effect to all of the provisions of each; and it seems to me that when that is done it will be found that all warrants should be paid in the order of their presentation for payment. If that be true, the ruling of the district court was right, and its judgment should be AFFIRMED.

GRANGER, J., concurs in this dissent.

## Supplemental Opinion.

### Wednesday, January 25, 1899.

Per Curiam. The foregoing opinion was withdrawn on our own motion, for the purpose of adding a brief statement on a point disclosed by the record, but which counsel did not see fit to present. We make mention of it to forestall any mis-understanding of our holding.

It appears that Council Bluffs was organized as a city of the first class subsequent to the year 1881, and by the terms of chapter 4, Acts Twenty-second General Assembly, it is excepted from the application of the provisions of that statute. This point counsel, for some reason, studiously avoided presenting. They united in stating two propositions only as raised by the demurrer. These we disposed of in the original opinion. More than this we were not permitted to do, under our well-established rule, to give no attention to points not argued. Counsel had a right, of course, to rest their client's claim upon any ground they saw fit. We only desire to say that the case was decided upon the theory on which it was here tried, viz., that the statute mentioned applied to the city of Council Bluffs. Because of the method of presenting the case, we assumed, but did not decide, that the statute applied. If it does not, the effect of the exemption is an open question, to be settled hereafter.