HORTON TOWNSHIP et al., Appellants, v. DRAINAGE DISTRICT No. 26 et al., Appellees.

**DRAINS:** Compromise Contract Without Notice to Property Owners. A board of supervisors which has formed a highway drainage dis-

trict (Ch. 2-B, Tit. X, Code Suppl. Supp., 1915), and let a contract thereunder on competitive bids and after due notice, has power, during a time when part of the work has been completed and part remains untouched, and when the board and the contractor are in a good-faith dispute as to which party has breached the contract, to enter into a compromise contract *without notice to property owners,* by which the contractor agrees to complete the work on the part on which he is then engaged, and is, together with his bond, otherwise released from all liability.

*Appeal from Osceola District Court.*—C. C. BRADLEY, Judge.

## APRIL 6, 1921.

### REHEARING DENIED OCTOBER 1, 1921.

ACTION in equity, to enjoin a board of supervisors from carrying into effect a compromise contract, whereby the construction company was to complete a certain segment of an improvement for a certain consideration, and was to be relieved from constructing the other portion of the improvement, and from its liability under the original contract. Facts appear in the opinion.—*Affirmed.*

*Clark, Dwinell & Meltzer,* for appellants.

*B. F. Butler* and *Morse, Kennedy & Herrick,* for appellees.

ARTHUR, J.—On May 1, 1917, the board of supervisors of Osceola County, by resolution, established Drainage District No. 26, containing lands in Horton and Fairview Townships and certain highways adjacent to the land. Thereafter, a tax was levied against the agricultural lands and highways. The drainage district was established on petition by the township trustees, asking that a drainage district be established for the purpose of draining highways surrounding certain described lands in Horton and Fairview Townships, Osceola County. About November 2, 1917, in pursuance of notices for bids, the board of supervisors entered into a contract with the Crowley Construction Company for constructing the improvement in said district, to furnish all labor and materials, excepting certain materials, for

the sum of $18,463.95. The construction company, in lieu of a bond, deposited with the county auditor, for the use and benefit of the drainage district, certain checks in the aggregate of $4,620.

Thereafter, on the 6th of August, 1919, before the work was to be completed under the contract, and while the company was doing some, but very little, work on the improvement, and while no part of the work was finished, and when, on a large part of the improvement, no work had been done, the board, on behalf of the drainage district, served notice on the defendant the Crowley Construction Company of intention to cancel all the rights of the construction company under the contract, and to hold the company liable for the forfeiture of all estimates due or to become due, as liquidated damages, and to make the cash deposited by the construction company for a bond, liable for the damages because of the failure to properly perform its contract. Thereafter, on about the 8th day of September, 1919, the board, acting on behalf of the drainage district, entered into a new contract with the defendant Crowley Construction Company, whereby the construction company was to finish the work of certain portions of the improvement upon which the company had already done some work, which work was specifically itemized in the contract, and amounted to $6,778, as itemized under the former contract, upon which the company had received in warrants upon estimates $4,458.40, leaving due the construction company, when it had finished its work under the new contract, the sum of $2,319.60. The construction company finished the work under the new contract; but, before payment had been made to it, this action was begun, to restrain the board of supervisors and county officers from making payments under the new contract.

The so-called "new contract" was entered into by the board of supervisors, acting for the drainage district, and the construction company, in compromise of the controversies pending between them. By the terms of the original contract, the construction company was to have cash for their work as they progressed with the work, under certain estimates to be made by the engineer. A bond issue was authorized by the board, and bonds issued and sold. The bonds were legally defective, and

money was not realized on them until the issue was legalized by the legislature, in April, 1919. By reason of the county's not furnishing the money in payment of the work under the contract, as provided in the contract, the construction company claimed that the county had breached the contract. On the other hand, the county claimed that the work under the contract had not progressed and had not been done as provided in the contract.

At the time the board entered into the new contract, this situation confronted the board: The Crowley Construction Company would complete the work on the segment of the improvement provided for in the contract, at the prices of the original contract, amounting to $6,778, and credit thereon warrants which had been issued to it in the amount of $4,458.40, leaving due it $2,319.60, to be paid upon completion of the job. It would cost from $8,000 to $10,000 to secure another contractor to complete the work started by the company and not completed by it up to the point then reached,—the work provided for in the new contract. The Crowley Construction Company, a corporation, was insolvent, and recovery against it for anything in addition to the cash bond of $4,620, plus the deferred 20 per cent, which amounted to $1,114.60, aggregating $5,734.60, was impossible. The board had served notice on the company of intention to cancel the original contract. The time for completion of the work under the original contract had not expired, and the company might recover for the work they had done, *quantum meruit*. The construction company had not received pay for the work done, as provided in the original contract. Scarcity of labor, caused by the World War, would be urged by the company as an excuse for not having progressed with the work, as provided in the contract.

The record shows that the board made full investigation of facts affecting the issue involved, before entering into the compromise or new contract. It is conceded that the board acted, in the execution of the compromise or new contract, in perfect good faith.

Such was the situation under which the board entered into the new contract, whereby controversies between the board and the construction company were compromised, and whereby the

construction company was to finish the work on the segment
of the improvement on which they had commenced and done
some work. There was a portion, perhaps half or more, of the
original improvement upon which no work had been begun.
Under the new contract, the construction company was released
from its original contract with respect to that portion of the
work. A letting was advertised for the construction of the im-
provement in the portion of the district upon which the Crowley
Construction Company had done no work. The lowest bid was
over $30,000, which was rejected.

The issues presented to the lower court were whether or not
the board of supervisors, having let the original contract upon
notice, and as a result of competitive bidding, then had author-
ity to release the Crowley Construction Company and its cash
bond from all liability for failure to complete the original con-
tract, by entering into the new contract; and whether or not the
board acted *ultra vires* when, without notice to the appellant
taxpayers, it entered into private negotiations, and attempted
to sublet, by the new agreement, a portion of the work provided
for in the original contract. The court held that the board had
authority, without notice to the township trustees and to the
taxpayers within the district, to enter into the second or new con-
tract,—that is, that no notice as to the second contract was re-
quired; that Section 1989-a10, of Title X, Supplement to the
Code, 1913, providing for completion of work, does not, in terms,
require notice to the taxpayers. In this holding, the court was
correct. The notice prior to an original contract relates to the
character and extent of the work proposed, and not to the terms
of the contract. Bids are made and the original contract drawn
after the notices, without knowledge or notice to the landowners
as to the particulars regarding such matters. Section 1989-a10.

Appellees cite *Humboldt County v. Ward Bros.*, 163 Iowa
510, in support of their contention that notice to them and to
the trustees of the townships was required and mandatory. We
think nothing contrary to the court's holding is held in that
case.

Then we come to the remaining and important question to
be determined: Whether or not the board was in default on
the first contract, or rather, whether there was sufficient doubt

concerning the matter to make it a proper basis for a compromise between the parties; and if there was such doubt, and if the right of the board to hold the company was of doubtful validity, then whether the board was clothed with discretionary authority to make such a compromise as seemed to them to be wise, under the situation and conditions present.

It is a general rule that the law favors compromises; and if the board had authority to make a compromise,—it being conceded that the board was acting in good faith,—will the court attempt to control the discretion of the board in making a compromise contract? In this case, the good faith of the board is conceded. The first contract called for the payment of cash, and the company did not, in terms, agree to accept improvement certificates or warrants not backed by cash. Cash could be raised in two ways: (1) By sale of bonds, or (2) by the levy of assessments. It was not for the company, under the contract, to determine which course should be adopted. The contractors were entitled to be paid in cash, at the times and in the manner provided by statute. It appears from the record that the board, in issuing its bonds, pursued a legally defective method of raising the cash, and thereby delayed payment beyond the time in which the contractors had the right to expect payment in cash; and there seems to be at least some question as to whether the board had not thereby breached the contract. True, plaintiffs claim that the contractors had waived any such breach. But if there was a breach, it might have been regarded as continuing. The board, in good faith, believed that its rights under the contract, and also the rights of the contractors under the contract, were not free from doubt. Under that situation, the court below was not disposed to overturn the action of the board in entering into the new contract which compromised the controversy between it and the contractors, and provided for the finishing of the work on the improvement, so far as any work had been done upon the portion of the improvement which the new contract covered, and relieved the contractors from completing the portion of the improvement on which they had done no work.

This drainage district was petitioned for and established under Chapter 2-B, Title X, of the Supplemental Supplement to

the Code, 1915. The manner of letting contracts for the construction of improvements is not specified in this chapter. It would seem that the board had authority to construct the improvement under this chapter, if thought best, without advertising for competitive bids. The mode of contracting not being prescribed by statute, the board would have authority to make a contract for finishing the uncompleted work, at least for the finishing of the work on the portion of the improvement which had been partially and nearly completed. As supporting the authority of the board to thus provide for the completion of the work, see 3 McQuillin on Municipal Corporations, Section 1179.

Under this chapter, the board was not required to advertise for bids, or to let a contract, but they could do the work in any way they thought was for the best interests of the district. The board entered into the compromise contract with the contractor in good faith, and under the advice of the county attorney and the county engineer.

It seems clear to us that the district was established under Chapter 2-B. The appellants make some contention that, because of the character of the land, and because the landed interest is far greater than the highway interest, the district was, in fact, established under Chapter 2-A of Title X of the Supplement to the Code, 1913. However that may be, it is provided in Chapter 2-A that, upon the failure of the contractor to complete his contract, the board may either readvertise for bids and relet the work by separate contract, or the board may take the work over and complete the work without readvertising for bids, or without reletting the work to any contractor.

Appellants' contention that notice must be given to the taxpayers and trustees within the district prior to entering into a new contract, if a new contract is necessary to the completion of the improvement, we think is not well taken. Section 1989-a11 relates entirely to changes in the dimensions or location of the improvement, and not to the procedure to be followed in constructing such improvement or drain. This section does not require a notice to taxpayers, unless some change is made in dimensions or location of improvement of the district.

The Iowa drainage law provides for a notice to property owners of the proceedings for the establishment of a drainage

district, and for an appeal therefrom by any person aggrieved, and also for a notice of the levy of the assessment to pay for the costs and expenses, and for an appeal by any property owner who thinks his assessment unfair. No other notice to the property owners is provided for, excepting where, after the establishment of the district and before the completion thereof, some change is made in the improvement contemplated, such as the size or depth of the drain, or some change made in the location, and notice is required to property owners affected thereby. Under Section 1989-a8 of the Supplemental Supplement, 1915, a notice to contractors of the letting of the original contract is provided for. This is not a notice to property owners, and is not required under the Constitution, to afford "due process." *Chicago & Northwestern R. Co. v. Board of Supervisors,* 182 Iowa 60. Upon the establishment of the district, and upon the levying of the assessment necessary to pay the cost thereof, and upon the letting of the contract for the work, all notices required by the law were given.

As before mentioned, it is contended by appellee that the proceedings and establishment of the district were under Chapter 2-B, Title X; while appellant contends that the district was established under Chapter 2-A, Title X. The parties, in their stipulation of facts, agree that the proceedings were under Chapter 2-B. As we view it, it makes little difference under which chapter the district was established, in determining the authority of the board to make the compromise or new contract. Under Chapter 2-A, the board, in letting the original contract, must advertise for bids, and let the contract to the lowest responsible bidder. Chapter 2-B does not require letting of the contract by competitive bidding. There is no manner specified in which the board shall let the contract or do the work. Chapter 2-B (Sec. 1989-b11, Suppl. Supp., 1915) provides:

"Improvements herein contemplated shall be constructed by the board of supervisors under the supervision and expert knowledge of the county engineer."

This is the only provision in Chapter 2-B relative to the construction work. The board of supervisors, under whatever chapter they assumed to proceed, let the work under the original contract by competitive bidding. The board, having been given

the power by statute to begin suit against the construction com-
pany to recover damages for noncompletion of the work it had
contracted to do, may compromise respective claims without
bringing suits.  Especially may the board compromise its claim
against the contractor when the contractor also has substantial
rights and claims against the district because of the failure of
the district to pay according to the contract, and because of the
failure of the district to extend the contract according to the
terms of the contract, when the contractor was prevented from
completing its contract by reason of unavoidable scarcity of
labor, and because of the attempt of the district to forfeit the
contract before the time set for its completion.  It must be re-
membered that the time set for the completion of the contract,
by the terms of the contract, was not up until September 1,
1919.  The board, having served notice for cancellation of its
contract before the expiration of the time limited for the com-
pletion of the work, gave the contractor the right to cancel its
contract, and recover upon a *quantum meruit*.    *Humboldt
County v. Ward Bros.*, 163 Iowa 510.  The authority of the
board to make the compromise contract must be found in the
authority given by statute to begin and prosecute a suit against
the construction company for damages for noncompletion of
the original contract, if such authority exists.

The power to institute and prosecute a suit on behalf of
the district for damages for failure to perform a contract would
seem to include authority and the right to settle the same by
compromise contract.    *Grimes v. Hamilton County*, 37 Iowa
290; *Town of Petersburg v. Mappin*, 14 Ill. 195; *Mills County
v. Burlington & M. R. R. Co.*, 47 Iowa 66; *Collins v. Welch*,
58 Iowa 72; *Allen v. Cerro Gordo County*, 34 Iowa 54.

The conclusion is warranted, under the record, that this
new contract was not improvidently made.  We do not have
before us whether an improvident contract of compromise would
be upheld, and we do not pass upon that question.

Supporting the authority of public corporations to com-
promise claims, see *Agnew v. Brawl*, 124 Ill. 312 (16 N. E. 230);
*State v. Martin*, 27 Neb. 441 (43 N. W. 244).

A controversy between the parties was sufficient to con-

stitute consideration for the compromise contract. *Richardson & Boynton Co. v. Independent Dist.*, 70 Iowa 573.

We conclude that the trial court was right in permitting the compromise or new contract entered into by the board with the construction company to stand, and in denying plaintiff's prayer for injunction, and in dismissing petition. Accordingly, decree and judgment of the trial court are affirmed.—*Affirmed*.

EVANS, C. J., STEVENS and FAVILLE, JJ., concur.