The City of Poughkeepsie, Respondent, *v.* William I.
Quintard, Appellant.

Provisions in a municipal charter, pointing out the mode of payment
of a matured debt, operate only when ultimate payment is required,
and do not apply where, by the extension of the debt, its payment is
in fact postponed.

The provision of the charter of the city of Poughkeepsie (§ 125, chap.
523, Laws of 1883), prohibiting its common council from borrowing any
money, or creating "any pecuniary obligations whatever on the part of
the city, which shall not be payable in the current year, and which can-
not be discharged from the income of the same year," is not in conflict
with the provision of the Refunding Act of 1878 (Chap. 75, Laws of
1878, as amended by chap. 526, Laws of 1889), which authorizes the
· extension of the bonded debt of a village, city or county, for a period

not exceeding thirty years, by an exchange of old for new bonds, or by the issue and sale of new bonds, the proceeds to be applied to the cancellation of the old ones.

Accordingly *held*, that bonds issued and sold by the city, pursuant to said act of 1878, to retire its water bonds issued under the act of 1867 (Chap. 333, Laws of 1867) were valid; that while the transaction was in form a borrowing of money, it was in reality simply refunding an existing debt.

*It seems* said act of 1878 applies to all the municipalities in the state, without reference to their charters or the statute under which the indebtedness sought to be refunded was created, and is an enabling act of which any city may avail itself.

Reported below, 65 Hun, 141.

(Argued December 6, 1892; decided December 20, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made July 22, 1892, which directed a judgment in favor of plaintiff upon a case submitted under section 1279 of the Code of Civil Procedure.

The question submitted was as to plaintiff's right to enforce specific performance of a contract of sale by plaintiff to the defendant of nineteen bonds of $1,000 each, which were issued and sold pursuant to the Refunding Act of 1878 (Chap. 75, Laws of 1878, as amended by chap. 526, Laws of 1889), for the purpose of paying, with the proceeds thereof, a like number of maturing water bonds previously issued by the plaintiff. The defendant refused to perform the contract on the ground that, because of a prohibition contained in its charter, plaintiff was not authorized to issue the bonds.

The material facts are set forth in the opinion.

*Appleton L. Clark* and *John H. Sedgwick* for appellant. The city of Poughkeepsie has no power to borrow money, and is prohibited from borrowing money, except as empowered by its charter. (Laws of 1883, chap. 523, § 125.) In thus prohibiting the city from borrowing money, the legislature did not leave the city helpless as to paying the water debt, but made provision (in the city's charter) for paying such a debt and meeting any new expense incurred for water purposes.

(Laws of 1867, chap. 333, § 14; Laws of 1874, chap. 497, § 10; Laws of 1883, chap. 523, §§ 223, 224, 225.) Section 125 of the city charter must be strictly construed because such construction is reasonable, it is in accord with the context, and the words are clear and unambiguous. (*People ex rel.* v. *Greene,* 66 How. Pr. 330; *McCloskey* v. *Cromwell,* 11 N. Y. 593; *Purdy* v. *People,* 4 Hill, 396, 403; *Waller* v. *Harris,* 20 Wend. 561, 562; *Johnson* v. *H. R. R. R. Co.,* 49 N. Y. 455, 462; *Benton* v. *Wickwire,* 54 id. 226; *Bell* v. *Mayor,* etc., 105 id. 144; *F. A. Bank* v. *Colgate,* 120 id. 394.) The "raising of money" by the issue of bonds under the Laws of 1878, chapter 75, as amended, is a " borrowing " under the city charter. (Laws of 1883, chap. 523, § 125.) The enactment of a subsequent general act does not modify, annul or repeal a prior special act, and, therefore, chapter 75, Laws of 1878, does not repeal chapter 497, Laws of 1874. (*In re Evergreens,* 47 N. Y. 216; *Weiler* v. *Uembach,* 114 id. 36; *Whipple* v. *Christian,* 80 id. 523; *State* v. *Morristown,* 33 N. J. L. 57; *City of Harrisburg* v. *Sheck,* 104 Penn. St. 53; *City of East St. Louis* v. *Maxwell,* 99 Ill. 439, 444; *Town of Ottawa* v. *County of Lasalle,* 12 id. 339; *Bowen* v. *Lease,* 5 Hill, 225; *B. C. Assn.* v. *City of Buffalo,* 118 N. Y. 61; *Dobbs* v. *G. J. W. Works Co.,* L. R. [9 Q. B. Div.] 158; *Bd. Suprs.* v. *L. I. & C. Co.,* 93 U. S. 619; *Mark* v. *State,* 97 N. Y. 572.)

*C. B. Herrick* for respondent. The common council of the city of Poughkeepsie has authority to issue and sell new bonds for the purpose of paying maturing bonds as provided by Laws 1878, chapter 75. (*Wells* v. *Town of Salina,* 119 N. Y. 280; *In re Curser,* 89 id. 401; *Mark* v. *State,* 97 id. 572; *Churchill* v. *Crease,* 5 Bing. 178; *People ex rel.* v. *McClave,* 99 N. Y. 83, 89; *Hoey* v. *Gilroy,* 129 id. 132, 138; *Pease* v. *Whitney,* 5 Mass. 380; *Nichols* v. *Bertram,* 3 Pick. 341; *State ex rel.* v. *Perrysburg,* 14 Ohio St. 472; *Townsend* v. *Little,* 109 U. S. 504, 512; *Whipple* v. *Christian,* 80 N. Y. 523.) The common council legally issued and sold the bonds in

question. (Dillon on Mun. Corp. [3d ed.] § 60; *Birdsall* v. *Clark*, 73 N. Y. 73.) An action can be maintained to enforce specific performance of a contract relating to personalty. (*Deen* v. *Milne*, 113 N. Y. 303.)

FINCH, J. The question raised in this case is over an apparent collision between the terms of the charter of the city of Poughkeepsie and the Refunding Act of 1878. The former provides (§ 125, chap. 523, title V, Laws of 1883) that "the common council shall not have power to borrow, and is hereby expressly prohibited from borrowing, any money on account of the city except as herein provided. The said council shall not create any pecuniary obligations whatever on the part of the city which shall not be payable in the current year, and which cannot be discharged from the income of the same year." This provision, appearing first in the charter of 1854, was repeated in 1874, and has constantly remained as a restraint upon the city. Nevertheless a bonded debt was lawfully created to supply the city with water. That was done, not by an amendment of the charter, but by express legislative permission outside of it granting authority to borrow money for such purpose (Laws of 1867, chap. 333), and that permission was given without notice of or reference to the section of the charter prohibiting a loan. It operated as a permitted specific exception to an established general rule, and so construed the two acts could be read together without collision or contradiction. In 1878 (Chap. 75) and in 1889 (Chap. 526) what is known as the Refunding Act was passed, which authorizes in two forms the extension of a bonded debt for a period of not exceeding thirty years, but at a lower rate of interest. This act applies to every village, city or county owing such debt and desiring to extend it through an added period of credit It applies to all of them without reference to their charters or the acts under which the indebtedness was created, and is an enabling act of which any city may avail itself. The two forms of extension authorized are, first, an exchange of old for new bonds securing the new credit at the

lower rate of interest, and, second, to meet the emergency of a refusal by holders to make the exchange bond for bond, the issue and sale of new bonds, applying the proceeds to the cancellation of the old ones. The city of Poughkeepsie chose the latter course, but is met by a refusal of the purchaser to take the new bonds upon the ground that it is a borrowing of money prohibited by the charter. It must be conceded that the transaction in form may be a borrowing of money, but in substance it is the very different case of refunding an existing debt. There is a new creditor and a reduced rate of interest, but the same old debt. The municipal liability is not increased, but merely suffered to remain, and not a dollar of new or added debt results. The transaction is no different from what it would have been if there had been an exchange of bonds. There it is conceded there would have been no borrowing of money and merely an extension of credit. But the actual result and the contemplated purpose are exactly the same under the second form of refunding as under the first, and I do not think the permission of the Enabling Act comes into collision with the prohibition of the charter. That prohibition had an obvious purpose and meaning. It was to restrain the creation of a debt, not the extension of one already existing; to prevent a new liability, not to postpone payment of an old one; to shield the taxpayers from the waste and danger of extravagant and needless appropriations, and not to obstruct the convenient and beneficial extension of a proper debt lawfully incurred. Full force and effect can be given to each statute by reading them together and construing them as if they were contained in one and the same act of legislation. It is our duty to harmonize them if possible, and I can see no more reason for deeming them inconsistent and repugnant than the provision of the charter and the original act authorizing the water debt. It is true that the Refunding Act is a general act applying to all the municipalities, and that circumstance is urged to show that it worked no repeal of the debt provision of the charter, but no repeal was necessary or intended. Here was in the Refunding Act a specific permis-

sion to do one particular thing granted to all cities and so given to Poughkeepsie, and that particular intention to allow the refunding of its maturing debt is met by the general intention manifested in the charter not to permit any debt to be contracted at all, and in such a case, if there be inconsistency, the particular intention takes effect as an exception. (*Hoey* v. *Gilroy,* 129 N. Y. 132.) But I do not think that the refunding provision is within the spirit or intent of the charter prohibition. The object and purpose of the latter was to prevent something entirely different in substance and effect from that which the Refunding Act permitted, and the two statutes may be read together and each perform its proper office and accomplish its appropriate duty without necessary collision or inconsistency.

Nor do we encounter difficulty in the provisions of the charter which point out the mode of payment and provide for the payment itself of a matured debt. They operate only when ultimate payment is required, and have no application when, by the extension of the debt, its payment is postponed in fact. What may seem payment in form is not so in truth, but a mode of substituting extended bonds for those matured, taking the form of payment solely to compel the substitution intended. I think substance would be sacrificed to form, the intention of one statute be defeated and of the other perverted, if we should construe them as hostile and inconsistent.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.