(72 N. W. Rep. 916.)

---

## JOHN BIRKHOLZ *vs.* JOHN DINNIE, *et al.*

Opinion filed October 4th, 1897.

**Constitutional Debt Limit.**

> Under § 183 of the Constitution the indebtedness of a city cannot be increased beyond the limit therein specified, even though such debt is incurred by the issue of bonds, for the purpose of refunding the indebtedness of such city. In such a case the debt is temporarily increased beyond the constitutional limit, and such increase may be permanent, owing to the loss or diversion of the fund created by the sale of such refunding bonds.

Appeal from the judgment of the District Court of Grand Forks County; *Fisk,* J.

Action by John Birkholz against John Dinnie, Frank A. Brown, and Martin L. Gorden, mayor, auditor, and treasurer respectively of the City of Grand Forks, N. D., to enjoin the making, signing, and registering of certain refunding bonds. Defendant demurred to the complaint. The demurrer was overruled and defendants electing to stand upon their demurrer, final judgment was entered in favor of plaintiff enjoining the defendants as prayed for in the complaint. Defendants appeal from the judgment.

Affirmed.

*Burke Corbett,* for appellants.

Refunding bonds do not fall within the constitutional or statu-

tory prohibition against debt exceeding a certain per cent. of the assessed value of the property within the city limits. *City* v. *Quintard*, 136 N. Y. 275, 32 N. E. Rep. 764; *Powell* v. *City*, 107 Ind. 106, 8 N. E. Rep. 31; *Board of Com'ers.* v. *Same*, 26 Kan. 181. Opinion of Justices, 81 Me. 602, 18 At. Rep. 291. *Hotchkiss* v. *Marion*, 12 Mont. 218, 29 Pac. Rep. 821, *Los Angeles* v. *Teed*, 112 Cal. 319, 44 Pac. Rep. 580; *Miller* v. *School District*, 39 Pac. Rep. 879; *Palmer* v. *City*, 47 Pac. Rep. 209; *Board of Com'ers.* v. *Platt Co.*, 79 Fed. Rep. 567.

*J. B. Wineman*, for respondent.

The issue of the proposed bonds would be the creation of a new and independent debt and an increase of the city debt, the full amount of the bonds without regard to the purpose for which issued, and notwithstanding the subsequent decrease of the debt by the payment of existing bonds. *Township of Doon* v. *Cummings*, 142 U. S. 366, 12 S. E. Rep. 220; *Shaw* v. *Ind. Dist. of Riverside*, 77 Fed. Rep. 277. Any prohibition of indebtedness beyond a specified limit will apply in all cases, no matter what form the debt may assume or for what purpose incurred. Tiedman on Municipal Corporations 189 a; *Litchfield* v. *Ballon*, 114 U. S 190; *Davenport* v. *Klienschmidt*, 6 Mont. 502; *Council Bluffs* v. *Stewart*, 51 Ia. 385; *Lake* v. *Rollins*, 130 U. S. 662.

CORLISS, C. J. The object of this action is to obtain an injunction restraining the defendants, as officers of the City of Grand Forks, from issuing and selling the negotiable bonds of such city to the amount of $45,000. The purpose for which these bonds are about to be issued is to refund with the proceeds thereof certain municipal bonds of such city of the par value of $45,000, issued in 1882 and falling due August 1st, 1897. It is not proposed to issue these new bonds in place of the old bonds, the holders of the latter surrendering their obligations in exchange for the new bonds; but the plan is to sell these new bonds and apply the proceeds in satisfaction of the matured debt. It is urged by the plaintiff, who is a resident and tax payer of the City

of Grand Forks, that the proposed issue of these bonds will be illegal for two reasons. Only the first need be discussed, as we agree with him in his contention on that point. The first ground on which he attacks their issue is that the debt of the city will thereby be increased beyond the constitutional limit. Section 183 of the State Constitution provides as follows: "The debt of any county, township, city, town, school district or any other political subdivision, shall never exceed five (5) per centum upon the assessed value of the taxable property therein; provided, that any incorporated city may, by a two-thirds vote, increase such indebtedness three per centum on such assessed value beyond said five per cent. limit. In estimating the indebtedness which a city, county, township, school district, or any other political subdivision may incur, the entire amount of existing indebtedness, whether contracted prior or subsequent to the adoption of this constitution shall be included; provided, further, that any incorporated city may become indebted in any amount not exceeding four per centum on such assessed value without regard to the existing indebtedness of such city, for the purpose of constructing or purchasing water works for furnishing a supply of water to the inhabitants of such city, or for the purpose of constructing sewers, and for no other purpose whatever. All bonds or obligations in excess of the amount of indebtedness permitted by this constitution, given by any city, county, township, town, school district, or any other political subdivision, shall be void." The language is explicit. The debt shall never exceed a specified percentage of the assessed valuation. It is undisputed that if the bonds were not to be issued for the ultimate purpose of extinguishing an equal amount of city indebtedness their issue would violate this section of the constitution, the debt of such city already exceeding the maximum permitted by that section. But it is urged that in as much as their issue will result in only a temporary and not in a permanent increase of the city indebtedness the prohibition of the constitution does not apply. We do not so

construe the fundamental law. The language is that the debt shall never exceed the specified percentage of the assessed valuation. One day's continuation of such excess is as much within the condemnation, both of the letter and of the spirit of the constitution, as a year's continuation thereof. And what guaranty is there that the proceeds of the sale of these bonds will be used to wipe out the matured obligations? Many causes will readily suggest themselves to the mind which will lead to the diversion of such funds from the purpose for which they were procured. The people have seen fit to protect public interests against their own improvidence and extravagance. Aware of the ingenuity with which restrictions upon power are circumvented in great exigencies the framers of our organic law employed the most sweeping language to prevent such devices being successful. That instrument declares that never shall the debt exceed the specified percentage of the assessed value. No matter for what purpose it is created, or under what circumstances, or how pressing the emergency, or how short the indebtedness is to continue, if it will in fact increase the obligations of the municipality beyond the constitutional limit it falls within the letter and the spirit of the constitution. To give to § 183 so lax a construction that the debt limit may be passed by the sale of refunding bonds, is both dangerous and unwarrantable. Everyone must concede that if such bonds are not held to be within the scope of the prohibition the dishonesty of officials causing the loss of the proceeds of such bonds, or the loss of the money after it has been paid to the municipality, or the diversion of it to some other public purpose, may leave the old bonds unpaid and thus the constitutional inhibition will be violated and yet the new bonds be valid. The case of *Doon Township* v. *Cummings*, 142 U. S. 366, furnishes a practical illustration of the danger of such an interpretation of such a provision. In that case less than $6,000 of the proceeds of refunding bonds of the par value of $25,000 were applied in extinguishment of the old debt of the corporation. To have held the bonds valid in that case because they were issued to refund an existing indebt-

ednesss would have been to render nugatory the constitutional declaration that the debt should not exceed a specified percentage of the assessed valuation. We fully agree with the reasoning of Mr. Justice Gray in that case. We regard his argument as unanswerable. He says: "There is a wide difference in the two alternatives which this statute undertakes to authorize. The second alternative of exchanging bonds issued under the statute for outstanding bonds, by which the new bonds, as soon as issued to the holders of the old ones, would be a substitute for and extinguishment of them, so that the aggregate outstanding indebtedness of the corporation would not be increased, might be consistent with the constitution. But under the first alternative by which the treasurer is authorized to sell the new bonds and to apply the proceeds of the sale to the payment of the outstanding ones, it is evident that if (as in the case at bar) new bonds are issued without a cancellation or surrender of the old ones, the aggregate debt outstanding, and on which the corporation is liable to be sued, is at once and necessarily increased, and, if new bonds equal in amount to the old ones are so issued at one time, is doubled; and that it will remain at the increased amount until the proceeds of the new bonds are applied to the payment of the old ones, or until some of the obligations are otherwise discharged. It is true if the proceeds of the sale are used by the municipal officers, as directed by the statute, in paying off the old debt, the aggregate indebtedness will ultimately be reduced to the former limit. But it is none the less true that it has been increased in the interval, and that unless those officers do their duty, the increase will be permanent. It would be inconsistent alike with the words and with the object of the constitutional provision, framed to protect municipal corporations from being loaded with debt beyond a certain limit, to make the liability to be charged with debts contracted beyond that limit depend solely upon the discretion or the honesty of their officers." We are unable to discover any sound basis for the view which, in the teeth of a declaration that the indebtedness shall never, *i. e.* shall not for a

day or an hour, exceed a certain percentage of assessed valuation, considers a temporary excess as not within the prohibition. The fact that other debts equal in amount are subsequently paid with the money does not destroy the fact that the debt has been for a season increased beyond the constitutional limit. We do not wish to be understood as holding that refunding bonds cannot be issued to take the place of the old bonds which have matured. An exchange of bond for bond would not even temporarily increase the indebtedness of the city one dollar. It would be merely the substitution of one obligation for another. It would be analoguous to the giving of a renewal note at a bank. If the action which the city officials proposed to take was a mere exchange of new city bonds for old city bonds we would hold such action to be legal upon the facts in this record. Nor do we consider it necessary that an exchange of bond for bond should be made. We think that the mere execution of refunding bonds may be authorized even beyond the debt limit and that they may then be put on the market and sold on the condition that they are not to be delivered until an equal amount of the old bonds are surrendered. The resolution might provide that simultaneously with the delivery of the refunding bonds and the payment of the cash therefor there should be at hand an equal amount of the old bonds to be then and there extinguished by the use of the cash so received and delivered up to the city as part of the same transaction. But the purpose of the city officials is something radically different from an exchange or a sale guarded in the manner specified. Their plan is to sell the bonds of the city, thus increasing the indebtedness thereof against the prohibitions of the constitution and leaving uncertain the question whether the old debt will be fully extinguished or whether a dollar of it will be paid. The scheme is to pay the old debt with the proceeds of the new; but there is no absolute certainty, although there may be a probability, that this will be done. Nothing short of a certainty that the debt will not be increased permanently will suffice; and even that will not suffice if it is temporarily augmented

beyond the constitutional limit. We admit that there appear to be some decisions opposed to our ruling. It can probably be said that the weight of authority is against our view. See *City of Poughkeepsie* v. *Quintard*, 136 N. Y. 275, 32 N. E. Rep. 764; *Powel* v. *City of Madison*, 107 Ind. 106, 8 N. E. Rep. 31; *Board of Commissioners* v. *Same*, 26 Kan. 181, 201; Op. of Justices, 81 Me. 602, 18 At. Rep. 291; *Hotchkiss* v. *Marion*, 12 Mont. 218, 29 Pac. Rep. 821; *Los Angeles* v. *Teed*, 112 Cal. 319, 44 Pac. Rep. 580; *Miller* v. *School District No. 3*, (Wyo.) 39 Pac. Rep. 879; *Palmer* v *City of Helena*, (Mont.) 47 Pac. Rep. 209. But in one of these cases no question of constitutional prohibition was involved. *City of Poughkeepsie* v. *Quintard*, 135 N. Y. 275. In none of the cases was the inhibition of the fundamental law so sweeping in terms as ours. And nowhere do we find any attempt to answer the argument of Mr. Justice Gray in *Doon Township* v. *Cummings*, 142 U. S. 366. The assertion is made in these cases that to change the form of a debt is not within the condemnation of such a provision. But that temporarily something more than a mere change in the form of a debt is made when refunding bonds are sold and not exchanged, and that this condition may be permanent never seems to have occurred to the tribunals which have enunciated what we deem a dangerous and unsound interpretation of such constitutional prahibitions. It is an argument of some force that in § 182 of the Constitution, the state is expressly authorized to issue refunding bonds although the debt limit is thereby temporarily exceeded; whereas no such power is given by § 183 to the municipalities therein named.

The judgment of the District Court is affirmed. All concur.