TED HIBBS, Appellant, v. D. P. FENTON et al., Appellees.

No. 42612.

JUNE 23, 1934.

J. Don Wissler, for appellant.

Hugh G. Guernsey, and Stipp, Perry, Bannister & Starzinger, for appellees.

MITCHELL, J.— The appellant, as the owner of real and personal property in Appanoose county, Iowa, commenced an action to enjoin the appellees, who are members of and constitute the board of supervisors of said county, from issuing proposed funding bonds. It appears that there were approximately $32,000 in amount of the warrants of Appanoose county, Iowa, issued prior to January 1, 1934, which said warrants have been presented for payment to the treasurer of said county and by said treasurer stamped "unpaid for lack of funds". These warrants were issued during the years 1932 and 1933, and were drawn on the county poor fund of Appanoose county in payment of indebtedness incurred by said county during said years in the aid of the support of the poor residents within said county. Each and all of the warrants so issued exceeded the appropriations for the poor fund against which the same were issued and exceeded the estimated collectible revenues of said fund in said years. But, at the time each and all of said warrants were issued, the same were within and did not exceed the constitutional limit of indebtedness of Appanoose county, Iowa. During the year

1933, the taxable property within Appanoose county, Iowa, was regularly assessed for taxation purposes, and on January 1, 1934, the auditor of said county prepared a tax list based on said assessments and certified the valuations as shown thereby to the auditor of the state of Iowa in accordance with provisions of chapter 344 of the Code of Iowa of 1931. As shown by said tax list so certified on January 1, 1934, the value of the taxable property of said county was greatly decreased, thereby causing the outstanding indebtedness of said county to exceed 5 per cent of the total value of the taxable property of said county as ascertained from said tax list so certified on January 1, 1934. Said tax list for Appanoose county shows that the total value of all taxable property within said county is the sum of $19,473,217, and the present known outstanding indebtedness of said county, not including debts for the current expenses for the year 1934, is as follows:

| | |
|---|---|
| Bonds outstanding | $1,077,000.00 |
| Warrants outstanding issued prior to January 1, 1934 | 33,294.75 |
| Outstanding claims against poor fund incurred prior to January 1, 1934 | 2,229.05 |
| Total | $1,112,523.80 |

Thus the outstanding indebtedness of Appanoose county on January 1, 1934, exceeded the constitutional limit as defined by article XI, section 3, of the Constitution of the state of Iowa.

The appellee board of supervisors commenced proceedings to issue the funding bonds under the provisions of chapter 266 of the Code of Iowa 1931, and particularly section 5275 thereof, for the purpose of retiring said warrants and outstanding claims hereinbefore referred to, and proposed to levy a tax on all the taxable property within said county to pay the principal and interest of said bonds. The appellant commenced this action to enjoin the board, and the board filed a motion to dismiss the petition of the appellant, which motion was sustained by the lower court. And thus this appeal.

The sole and only question in this appeal concerns the power of a county, already indebted beyond its constitutional limit, to issue funding bonds in exchange for its valid outstanding indebtedness.

It is admitted by the appellant that the outstanding indebted-

ness of Appanoose county is a valid indebtedness, as it was valid when incurred and is therefore valid now. However, the appellant contends that, even though the outstanding indebtedness is valid, the funding of such indebtedness is contrary to the provisions of section 5283 of the 1931 Code of Iowa, which reads as follows:

"5283. Unconstitutional issue. Any member of a board of supervisors who shall vote to order an issue of bonds under the provisions of this chapter in excess of the constitutional limit, shall be held personally liable for the excess of such issue."

It will be observed that the above section does not prohibit a county from issuing bonds that are in excess of the limit prescribed by the Constitution. That section merely provides a penalty or liability against members of county boards of supervisors who violate the limitation contained in article 11, section 3, of the State Constitution.

Section 5275 of the Code is as follows:

"5275. Funding and refunding bonds. When the outstanding indebtedness of any county on the first day of January, April, June, or September in any year exceeds the sum of five thousand dollars, the board of supervisors, by a two-thirds vote of all its members, may fund or refund the same, and issue the bonds of the county therefor in sums not less than one hundred dollars nor more than one thousand dollars each, payable at a time stated, not more than twenty years from their date."

The above-cited section grants to counties the power to fund or refund their outstanding indebtedness. And section 5279 provides two methods by which the indebtedness may be funded, namely, by exchanging funding bonds for the indebtedness outstanding or by selling the funding bonds in accordance with the provisions of chapter 63 of the Code and using the proceeds of the sale in the payment of the indebtedness.

There is a distinction between a situation where funding bonds are issued in exchange for indebtedness and where funding bonds are sold and the proceeds applied in retiring indebtedness so far as regards the question of increasing the debt. This distinction is very ably pointed out by Justice Gray of the United States Supreme Court in the case of Doon Dist. Township v. Cummins (1891), 142 U. S. 366, 12 S. Ct. 220, 35 L. Ed. 1044. The court says:

"By the terms of the statute of Iowa of 1880, chap. 132, under which the bonds in question were issued, any independent school district or district township, having a bonded indebtedness outstanding, is authorized to issue negotiable bonds for the purpose of funding that indebtedness; and 'the treasurer of such district is hereby authorized to sell the bonds provided for in this act at not less than their par value, and apply the proceeds thereof to the payment of the outstanding bonded indebtedness of the district, or he may exchange such bonds for outstanding bonds, par for par.'

"There is a wide difference in the two alternatives which this statute undertakes to authorize. The second alternative, of exchanging bonds issued under the statute for outstanding bonds, by which the new bonds, as soon as issued to the holders of the old ones, would be a substitute for and an extinguishment of them, so that the aggregate outstanding indebtedness of the corporation would not be increased, might be consistent with the constitution. But under the first alternative, by which the treasurer is authorized to sell the new bonds, and to apply the proceeds of the sale to the payment of the outstanding ones, it is evident that, if (as in the case at bar) new bonds are issued without a cancellation or surrender of the old ones, the aggregate debt outstanding, and on which the corporation is liable to be sued, is at once and necessarily increased, and, if new bonds equal in amount to the old ones are so issued at one time, is doubled; and that it will remain at the increased amount until the proceeds of the new bonds are applied to the payment of the old ones, or until some of the obligations are otherwise discharged.

"It is true that if the proceeds of the sale are used by the municipal officers, as directed by the statute, in paying off the old debt, the aggregate indebtedness will ultimately be reduced to the former limit. But it is none the less true that it has been increased in the interval; and that, unless those officers do their duty, the increase will be permanent. It would be inconsistent alike with the words, and with the object, of the constitutional provision, framed to protect municipal corporations from being loaded with debt beyond a certain limit, to make their liability to be charged with debts contracted beyond that limit depend solely upon the discretion or the honesty of their officers."

In the case above cited the school district in Lyon county, Iowa,

issued and sold bonds for the purpose of using the proceeds to retire valid outstanding indebtedness at a time when the district was indebted beyond the constitutional limit. This the Supreme Court of the United States held was creating a debt and therefore contrary to the Constitution of this state. But, in the case at bar, Appanoose county does not propose to sell bonds for the purpose of using the proceeds to retire valid outstanding indebtedness, but it proposes to exchange funding bonds for outstanding valid indebtedness.

Justice Sanborn, speaking for the court, in Lyon County v. Keene Five-cent Savings Bank (C. C. A.) 100 F. 337, in discussing this question, said, at page 339:

"There was a legal method—the method of exchange—by which they could have issued the bonds without increasing the debt a mill, and the legal presumption is that they pursued this method, and that the issue of these bonds neither created nor increased the debt of the county, but simply changed its form."

And so in the case at bar the board of supervisors is simply exchanging funding bonds for the outstanding valid indebtedness. It is not increasing the debt. It is simply changing its form. The appellant claims that section 5283 must be so construed as to prohibit a county from using funding bonds to be exchanged for valid outstanding indebtedness when the county has reached its constitutional limit, and that the valid outstanding indebtedness of a county cannot be funded or refunded under chapter 266, and particularly the section in question, when the bond issued would be in excess of the constitutional limit.

If appellant's argument were sound, it would mean that many of the counties of Iowa would be forced to permit their outstanding valid bonds to become defaulted, since many of the counties in Iowa are now indebted beyond the constitutional limit and have bonds that will mature without having funds with which to retire them. It would only be a matter of a short time before the now excellent standing of Iowa municipal and county bonds for investment purposes would be considerably shaken and difficulty would then be encountered for the sale of same.

The legislature in enacting section 5283 did not attempt to prohibit a county indebted beyond its debt limit from issuing funding bonds in exchange for valid outstanding indebtedness. The plain language of the section imposes a liability on members of a board

of county supervisors and does not purport to be a restriction on the county. The liability imposed on the individual members of the board of supervisors is for the violation of certain provisions of the Constitution of the state as is stated in the section. Nowhere in the Code is there any statute limiting the funding bonds that may be issued by a county in exchange for its valid indebtedness. Funding bonds so issued are not a violation of the Constitution, for they are not increasing the debt of the county but simply changing its form. Certainly section 5283 cannot be so construed as to impose a liability on the members of the board of supervisors, since that would in effect penalize a public official for doing an act which the law expressly authorizes. Such refunding bonds that are issued in exchange for valid outstanding indebtedness, as proposed by the board of supervisors of Appanoose county, are not in excess of the constitutional limit, because the Constitution does not limit the exchange of funding bonds for valid indebtedness in renewal of such indebtedness. Section 5283 imposes a penalty on members of boards of supervisors who vote to incur a debt beyond the constitutional limit. But that is not the question that confronts us in the case at bar. In the case at bar the board of supervisors of Appanoose county is simply issuing funding or refunding bonds in exchange for valid indebtedness. This the board of supervisors has a right to do, and the lower court was right in sustaining the motion to dismiss.

Judgment and decree of the lower court must be, and it is hereby, affirmed.

CLAUSSEN, C. J., and EVANS, STEVENS, ALBERT, ANDERSON, DONEGAN, and KINTZINGER, JJ., concur.