E. G. Banta, Appellant, v. Clarke County et al., Defendants, Appellees; State of Iowa et al., Intervenors, Appellees.

No. 43006.

April 3, 1935.

M. R. Stansell, for appellant.

H. G. Stubblefield and O. M. Slaymaker, for defendants-appellees.

C. E. Walters, Special Assistant Attorney-general, for intervenors-appellees.

Kintzinger, J.—On July 5, 1929, Clarke county, Iowa, duly and legally issued and sold primary county road bonds in the total

sum of $269,000, in denominations of $1,000 each, bearing 5 per cent interest, maturing in numerical order at the rate of $25,000 on May 1st of each of the years beginning May 1, 1935, to and including May 1, 1943, and $44,000 maturing on May 1, 1944. The defendants will have sufficient money on hand to pay the interest due upon all the bonds on May 1, 1935, and also the principal of the $25,000 series maturing May 1, 1935. The balance of defendant's outstanding primary county road bonds aggregating $244,000 is subject to call May 1, 1935, and the defendant county seeks to refund such bonds at a greatly reduced rate of interest by the issue and sale of new bonds at that time.

When the present bonds were issued in 1929, the assessed valuation of all taxable property in Clarke county was *$20,787,913*, and the total indebtedness of the county was *$892,000*. This was well within the 5 per cent debt limit authorized by article XI, section 3, of the constitution of the state of Iowa. At the present time, the assessed valuation of all taxable property in Clarke county is only *$13,905,594;* and the total aggregate indebtedness is *$823,000*. This is more than the 5 per cent constitutional debt limit. The present indebtedness, however, includes the present outstanding primary county road bonds which were issued when the total indebtedness of the county was well within the 5 per cent constitutional limit, and is therefore a valid obligation against the county.

The state highway commission under authority and direction of chapter 48 of the 45th General Assembly (Extra Session) (sections 4755-f6 to 4755-f10, Code 1935) has recently devised a comprehensive plan for refunding about $35,000,000 worth of primary county highway bonds in about sixty-six counties of the state. The record shows that the present outstanding bonds bear from $4\frac{1}{2}$ to 5 per cent interest; and that, under the present bond market, arrangements have been made to refinance the obligation of the present outstanding bonds by the issuance of new bonds bearing interest at an average rate of $2\frac{1}{2}$ per cent. Under the proposed plan the old bonds are to be refunded by the issuance and sale at par of new bonds, and the proceeds thereof are to be placed in a sinking fund to be used for the sole and only purpose of taking up an equal amount of outstanding road bonds when presented. The outstanding bonds have been or are to be called in for payment on May 1, 1935, at which time the interest thereon will cease. This will result in a saving of about 2 per cent interest per year on about $35,000,000

if refunded under the plan proposed. Clarke county will save the same amount of interest by refunding its bonds under this plan. The reason for the new issue is to save the various counties of the state about one-half of the interest now being paid on the $35,000,000 bonds now outstanding.

The proceeds of the sale of the new bonds are, under chapter 42 of the 46th General Assembly (section 4753-g1, Code 1935), to be used solely for the purpose of paying off, as in this particular case, an equal number of outstanding road bonds, subject to call on May 1, 1935. The legislature for the purpose of authorizing such refunding enacted the following act in February, 1935, known as chapter 42 of the 46th General Assembly:

"An Act to authorize the issuance and sale of primary road refunding bonds in counties whose indebtedness may be in excess of the legal limitations; to require that funds received by the county treasurer from the sale of such refunding bonds shall be deposited in a special trust account; to provide that such funds shall be computed as an off-set against the indebtedness of said county; to provide that the issuance of such bonds shall not be regarded as incurring an indebtedness; to require that any other funds received by the county treasurer for the payment of primary road bonded indebtedness or interest thereon shall be deposited in such special trust account and to prohibit the use of any of such funds for any purpose other than the payment of primary road bonded indebtedness of said county and interest thereon and to repeal all laws to the extent they conflict therewith.

"Be it enacted by the General Assembly of the state of Iowa:

"Section 1. Any county which has primary road bonded indebtedness outstanding is hereby authorized to issue and sell primary road refunding bonds, notwithstanding that at the time of such issuance and sale the indebtedness of such county may be in excess of its legal limitations. The proceeds of such primary road refunding bonds, together with all other funds from time to time coming into the possession or control of a county treasurer for the purpose of paying interest on or principal of primary road bonded indebtedness shall be by such county treasurer converted into a separate account, and any of same as may be deposited in an otherwise qualified county depository shall, when so deposited, be designated and held by such depository without interest as a special trust fund deposit. When funds in any such separate account and/or

special trust fund deposit shall be held for the retirement of certain designated bonds, then such funds shall be regarded as sinking funds and shall be computed as an off-set against the indebtedness of said county represented by such particularly designated bonds.

"The issuance of primary road refunding bonds by any county and the conversion of the proceeds thereof into a separate account and/or special trust fund deposit shall not be regarded as the incurring of indebtedness by such county within the meaning of any constitutional or statutory limitation. *No withdrawal shall be made from said separate account or said special trust fund deposit except in payment for interest on or principal of primary road bonds or bonds issued to refund primary road bonds of such County.* (Italics ours.)

"Section 2. All laws in conflict herewith are to the extent of such conflict hereby repealed.

"Section 3. (Publication clause making act effective immediately.)"

This statute became effective February 25, 1935. Thereafter the defendants, under the direction of the Iowa state highway commission, entered into negotiations for the sale of $244,000 of primary county road bonds to refund an equal amount of Clarke county primary road bonds issued in July, 1929, subject to call May 1, 1935. The record shows that the new bonds will be issued, sold, and delivered on May 1, 1935, and the old bonds are called for payment at the same time; the interest thereon to cease on the same date.

Under a stipulation of facts, it was agreed "that the Iowa State Highway Commission has adopted a comprehensive plan for refunding the primary road bonded indebtedness of the State of Iowa, of which the bond indebtedness of Clarke County is a part, and the proceedings of which in Clarke County, are a part of the proceedings required under said plan of refinancing." It was also agreed "that in the sale of $244,000 of primary road refunding bonds of Clarke County, *none of such bonds will be delivered to the purchaser until such purchaser pays in full for the bonds delivered. That the delivery of the bonds and the payment therefor will all be at the same time, be a part of the same transaction, and take place simultaneously, and the proceeds will be received by the county treasurer and handled as required by law.*" (Italics ours.)

I. It is first suggested that chapter 42 of the 46th General Assembly is invalid because the act embraces more than one subject, contains subjects not expressed in the title, and that the procedure in adopting the act was not in accordance with requirements of the constitution and laws of the state. These objections are not seriously urged here, and an examination of the record shows without dispute that the act was duly and legally adopted according to all requirements of the constitution and laws of this state. There is therefore no merit in this objection.

II. The sole question for determination, therefore, is whether or not the attempt of Clarke county to refund $244,000 of its outstanding primary county road bonds, in the manner above set out, and as provided by chapter 42 of the 46th General Assembly, is prohibited by article XI, section 3 of the constitution of this state, which provides as follows:

"No county, or other political or municipal corporation shall be allowed to become indebted in any manner, or for any purpose, to an amount, in the aggregate, exceeding five per centum on the value of the taxable property within such county or corporation * * *."

Appellee contends that the refunding of its valid outstanding primary road bonds in the manner provided by chapter 42 of the 46th General Assembly, and as undertaken by defendants in this action, is not prohibited by the debt limit provisions of the constitution.

Two methods of funding or refunding outstanding bonds are quite commonly followed. One is to issue and place in the hands of the county treasurer or trustee new bonds to be delivered to the holders of the outstanding bonds, bond for bond, upon the return and cancellation of the old bonds. Under this method the new bonds are not delivered until the old bonds are returned in exchange therefor. Under this method it is uniformly and unanimously held by all courts that the new bonds are not a debt until delivered, and as the old bonds are returned and extinguished simultaneously with the delivery of the new bonds, no additional indebtedness has been created. This is the rule where the old bonds were valid when issued, even though the aggregate indebtedness might exceed the debt limit thereafter when a funding or refunding is made. As stated in Heins v. Lincoln, 102 Iowa 69, 71 N. W. 189, and in our

recent case of Hibbs v. Fenton, 218 Iowa 553, 255 N. W. 688, the funding of bonds issued by a county indebted beyond its limit, in exchange for a previous valid indebtedness, is not a violation of the constitution because such a refunding is only an exchange of the new bonds for the old.

Under the second method, new bonds are sold and the proceeds of the sale are used to take up and extinguish the old bonds. There is a conflict in the authorities as to whether or not a procedure under this method is prohibited by our constitution, in cases where the aggregate of indebtedness of the county exceeds the constitutional debt limit at the time the new bonds are issued, although the bonds were valid when issued, because the aggregate indebtedness did not then exceed the constitutional debt limit.

One line of cases holds that this method does not increase the debt, and in effect amounts to a refunding of the old bonds. This rule is reached by the courts upon a theory that the proceeds from the sale of the new bonds will be used to take up the old bonds and extinguish the indebtedness represented thereby. This rule has been adopted by a majority of the states in which the question was considered and is supported by many cases hereinafter cited and referred to.

The opposite rule has been reached by other courts, including the supreme court of the United States and the state of Iowa. Doon Twp. v. Cummins, 142 U. S. 366, 12 S. Ct. 220, 35 L. Ed. 1044; Reynolds v. Lyon County, 121 Iowa 733, 96 N. W. 1096; Birkholz v. Dinnie, 6 N. D. 511, 72 N. W. 931; State v. McGraw, 12 Wash. 541, 41 P. 893.

The theory of these cases is that a double indebtedness exists between the time the new bonds are sold and the old ones redeemed, and that if the aggregate indebtedness represented by both the new and the old bonds exceed the constitutional debt limit, the issuance of the new bonds will be considered a violation of the debt limit provisions of the constitution. This is the minority rule and appellant contends that we are bound thereby, because it is supported by the supreme court of the United States in Doon Twp. v. Cummins, supra, and Reynolds v. Lyon County, supra, and because it is recognized by our court in Heins v. Lincoln, 102 Iowa 69, 71 N. W. 189, and Hibbs v. Fenton, 218 Iowa 553, 255 N. W. 688. It will be noticed, however, that any apparent approval given the Doon case in Heins v. Lincoln and Hibbs v. Fenton, supra, was purely dictum,

because the question there decided was that an exchange of bonds, bond for bond, was valid and the question of the validity of the issuance and sale of bonds for the purpose of redeeming an equal amount of old bonds was not raised in those cases.

Appellee challenges the correctness of this rule and contends it should not be followed.

These cases are based upon the idea that new bonds issued for the sole and only purpose of taking up and refunding the old bonds necessarily increase the total aggregate indebtedness of the county during the interval between the time they are issued and the time the old bonds are taken up. The reason is expressed in Doon Township v. Cummins, 142 U. S. 366, loc. cit. 371, 12 S. Ct. 220, 221, 35 L. Ed. 1044, as follows:

"The prohibition extending to debts contracted 'in any manner, or for any purpose,' it matters not whether they are in every sense new debts, or are debts contracted for the purpose of paying old ones, so long as the aggregate of all debts, old and new, outstanding at one time, and on which the corporation is liable to be sued, exceeds the constitutional limit."

These cases overlook the fact that it would be impossible to refund valid existing outstanding bonds where the debt limit has thereafter been reached, unless the money received from the sale of new bonds can be deducted as an offset, in computing the total aggregate indebtedness of the corporation at that time. Under the plan of refunding as outlined by our present statute, the new bonds are not delivered until the money is received in payment therefor. This money at that time belongs to the county. Under the new statute, such money is required to be placed in a sinking fund and used solely and only for the purpose of redeeming the outstanding bonds. The actual total indebtedness of the county within the meaning of the constitutional debt limit provision should be determined by deducting the cash on hand, segregated to meet the payment of certain designated bonds, from the gross indebtedness, because of the actual available cash to meet the payment of an equal amount of such certain outstanding bonds. After the new bonds are sold, the total cash on hand, including the segregated cash received from the sale thereof, will be increased by the amount so received. Therefore, the actual aggregate indebtedness of the county, within the

meaning of the debt limit constitutional provision, will be no more after the new bonds are sold than it was before.

The outstanding bonds are a valid indebtedness of the county, and liability thereon cannot be escaped simply because the total indebtedness at the present time exceeds the constitutional limit caused by a decrease in the valuation of the taxable property of the county. The new bonds are not issued for the purpose of increasing the indebtedness of the county. The result of the action taken under the new statutes is simply to change the form of the present bonded indebtedness by issuing and selling an equal amount of bonds at par, the proceeds of which are segregated in a trust fund for the sole and express purpose of redeeming certain old bonds.

It is the settled rule of law in this state that certain available anticipated revenue from taxes or otherwise, during a certain fiscal year, may be deducted as an offset in computing the total aggregate indebtedness of the corporation within the same period, in determining whether or not the total aggregate indebtedness comes within the debt limit meaning of the constitution. Dively v. City of Cedar Falls, 27 Iowa 227; Grant v. City of Davenport, 36 Iowa 396; Read v. Howe and Ensign, 49 Iowa 65; Phillips v. Reed, 107 Iowa 331, 76 N. W. 850, 77 N. W. 1031; City of Cedar Rapids v. Bechtel, 110 Iowa 196, 81 N. W. 468; Swanson v. City of Ottumwa, 118 Iowa 161, 91 N. W. 1048, 59 L. R. A. 620; Rowley v. Clarke, 162 Iowa 732, 144 N. W. 908; Miller v. City of Glenwood, 188 Iowa 514, 176 N. W. 373; Trindle v. School District, 200 Iowa 370, 202 N. W. 377.

In Dively v. City of Cedar Falls, supra, we said:

"Did the indebtedness created by the issue of the scrip exceed five per cent of the taxable property, and was the debt therefore void, * * * in violation of section 3, article XI, new Constitution, * * *. Testimony was introduced to show the aggregate of the tax lists within the corporation, * * * and that five per centum * * * would fall below the whole amount of scrip issued. But this conceded, the question actually arising is scarcely touched. * * * *If a municipal corporation has the money in its treasury to meet its indebtedness, the issue of warrants to the amount of $20,000, or any other sum,* however great, over five per cent of its taxable property, *would not be a violation of the Constitution.* In such a case

it would not 'become indebted' within the meaning of the clause under consideration." (Italics ours.)

In Phillips v. Reed, supra, we said:

"If the city had on hand or in prospect, at the time these warrants were issued, funds with which to meet them without trenching upon the rights of creditors for current expenses of the city, then the warrants were valid, although such funds may have been thereafter wrongfully applied to other purposes."

In Rowley v. Clarke, supra, we said:

"Warrants issued in anticipation of taxes are held not to constitute a debt on the theory that moneys, *the receipt of which is certain from the collection of taxes, are regarded as for all practical purposes already in the treasury and the contracts made upon the strength thereof are treated as cash transactions."* (Italics ours.)

In Miller v. City of Glenwood, 188 Iowa 514, loc. cit. 518, 176 N. W. 373, 375, we said:

"It will be noted that, in computing the city's indebtedness at the time the acts herein complained of were done, we deducted from the amount of outstanding bonds and warrants the cash on hand available to meet these obligations. As authority for so doing we call attention to Dively v. City of Cedar Falls, 27 Iowa 227."

In Trindle v. Consolidated Independent School District, 200 Iowa 370, loc. cit. 372, 202 N. W. 377, 378, we said:

"It is the settled law of this state that warrants issued for current expenses in anticipation of taxes which are in course of collection, and which are certain to be collected, do not constitute a debt within the meaning of the Constitution, and that the taxes so anticipated by such warrants are to be regarded, for all practical purposes as being already in the treasury. This was our holding in our initial case upon that subject. Grant v. City of Davenport, 36 Iowa 396."

The rule announced by the decisions hereinabove referred to has now been made statutory with reference to refunding primary highway county road bonds by chapter 42 of the 46th General Assembly. It is our conclusion that in computing the aggregate indebtedness of the county within the meaning of the debt limit pro-

vision of the constitution, the county is authorized to deduct from its aggregate indebtedness the amount of cash it is certain to receive from the sale of the new bonds, and segregated in a trust fund and to be used only for the purpose of paying of an equal amount of certain designated old bonds. Under the plan proposed, the new bonds will not be delivered until and at the very time they are paid for in cash. The county will therefore have additional cash assets equal to the total amount of the old bonds to be redeemed. It is true the present indebtedness includes the old bonds and that the total indebtedness at the present time exceeds the debt limit, but this excess was not caused by the issuance of the old bonds; at that time the total indebtedness did not exceed the debt limit provision of the constitution.

By deducting the amount of cash received from the sale of the new bonds, the present indebtedness, including both bond issues, will not exceed the prior total aggregate indebtedness of the county $1; and the existing indebtedness will remain the same. The county's financial balance sheet after the issuance of the new bonds will be exactly the same as before, except that cash will be on hand in the sinking fund to offset the present outstanding bonds in an equal amount. As the old bonds were valid when issued, they are valid now; and the county is authorized to redeem them out of the sale of the new. By so doing, there will be no new or added indebtedness, but the financial status of the county will be exactly the same as it was before.

Such is the rule adopted by a great majority of the courts of last resort in this country, which have refused to follow the minority rule announced in Doon Township v. Cummins, 142 U. S. 366, 12 S. Ct. 220, 35 L. Ed. 1044, and Reynolds v. Lyon County, 121 Iowa 733, 96 N. W. 1096. The contrary rule, authorizing the issuance and sale of new bonds to pay off outstanding bonds in an equal amount, even though the present indebtedness exceeds the constitutional limit, is supported by the following: Dillon on Municipal Corporations (5th Ed.) vol. 1, section 202; vol. 6, McQuillin on Municipal Corporations (2d Ed.) section 2385; Opinion of the Justices, 81 Me. 602, 18 A. 291, loc. cit. 292; City of Poughkeepsie v. Quintard, 136 N. Y. 275, 32 N. E. 764; Hirt v. City of Erie, 200 Pa. 223, 49 Atl. 796; Powell v. City, 107 Ind. 106, 8 N. E. 31, loc. cit. 35; Hanly v. Sims, 175 Ind. 345, 93 N. E. 228, loc. cit. 230, 94 N. E. 401; Ewert v. Mallery, 16 S. D. 151, 91 N. W. 479, loc.

cit. 481; National Life Insurance Company v. Mead, 13 S. D. 37, 82 N. W. 78, 48 L. R. A. 785, 79 Am. St. Rep. 876; City of Los Angeles v. Teed, 112 Cal. 319, 44 P. 580, loc. cit. 582; Citrus Growers Development Association v. Salt River Valley Water Users Association, 34 Ariz. 495, 268 P. 773; Hotchkiss v. Marion, 12 Mont. 218, 29 P. 821; Palmer v. City of Helena, 19 Mont. 61, 47 Pac. 209; Sebern v. Cobb, 41 Idaho 386, 238 P. 1023; Veatch v. City of Moscow, 18 Idaho 313, 109 P. 722, 21 Ann. Cas. 1332; Board of Commissioners v. Rollins, 9 Wyo. 281, 62 Pac. 351; Application of State to Issue Bonds, 33 Okl. 797, 127 P. 1065, loc. cit. 1069; In re Menefee, 22 Okl. 365, 97 P. 1014.

Vol. 1, Dillon on Municipal Corporations, section 202, says:

"The provision of the Constitution * * * is obviously directed against those operations which result in the creation of indebtedness on the part of a municipality and not against transactions which relate merely to the form of the obligation or the nature or character of the evidences of indebtedness. If, therefore, a municipal corporation has already issued bonds, warrants, certificates, or other evidences of indebtedness, which were valid when issued, or if it has incurred valid floating debt for current or other expenses, or if it is indebted on a valid judgment, the municipality may under statute authority, as a general rule, fund or refund such indebtedness by the issue of its bonds without incurring indebtedness within the meaning of the constitutional provisions. These funding or refunding bonds, issued for a valid pre-existing indebtedness, neither create debt nor increase the debt of the municipality which issues them. They merely change the form and terms of payment of an existing indebtedness.

"In refunding existing obligations it is apparent that the refunding may be effected either by the direct exchange of the refunding bonds for the antecedent obligation or by the sale of the refunding bonds and the application of the cash received in satisfaction of the precedent debt. A distinction has been drawn between these two transactions in applying the provision of the Constitution limiting the power to incur debt. The Supreme Court of the United States has adopted the view that if refunding bonds are not exchanged for existing evidences of indebtedness but are sold on the open market, and the proceeds paid into the municipal treasury for the purpose of being applied in the payment and satisfaction of the original obligations, *and such proceeds are not so applied,* indebted-

ness is incurred thereby within the meaning of the constitutional provision. * * * It is probable * * * that the * * * refunding of an existing indebtedness does not incur debt within the meaning of the Constitution. * * * Under the rule laid down by the Supreme Court of the United States, it does not follow, we think, that if the proceeds of the sale of the refunding bonds had been actually applied to the payment of the outstanding bonds and coupons, although not simultaneously with the issue of the refunding bonds, the refunding bonds would have been, or ought to have been, held invalid.

"The distinction itself has been criticized as more nice than real. And in some cases the state courts have refused to follow the alleged distinction, and have held that if the original indebtedness is valid refunding bonds do not create indebtedness within the meaning of the Constitution, whether they are exchanged for the existing debt or are sold and the proceeds applied in satisfaction thereof." (Italics ours.)

Vol. 6, McQuillin on Municipal Corporations, (2d Ed.) section 2385, says:

"In determining what constitutes an indebtedness, where a municipality has reached its debt limit, * * * it is held in a long line of decisions that a municipality *does not incur any new indebtedness* by funding or refunding existing indebtedness, and hence that funding or refunding bonds are not within the constitutional prohibition, but may be issued although the municipal debt limit has been already reached or exceeded. The funding or refunding of a debt previously created and existing is not an increase of indebtedness, but is merely a continuation thereof." (Italics ours.)

In "The Opinion of the Justices", 81 Me. 602, 18 A. 291, loc. cit. 292, the court said:

"If the new bonds be exchanged for the old, bond for bond, it would literally be a renewal and extension of the debt; and if the new bonds are *sold to obtain means with which to liquidate the old, it will, in all essential respects, amount to the same thing.* [Italics ours.] The same result will be reached, as far as the state is concerned. The old bonds were evidence of the war debt. The new bonds will become such evidence by substitution. The holders of the old bonds would, in equity, be considered as receiving payment

of their debt from the purchasers of the new bonds, when the money received from the new is applied, to take up the old bonds, and the act provides that the receipts of sale shall be so applied, and the judicial remedy may be had, * * * to prevent misapplication."

In City of Poughkeepsie v. Quintard, 136 N. Y. 275, 32 N. E. 764, loc. cit. 765, the court said:

"The transaction in form may be a borrowing of money, but, in substance, it is the very different case of refunding an existing debt. There is a new creditor, and a reduced rate of interest, *but the same old debt.* [Italics ours.] The municipal liability is not increased, but merely suffered to remain; and not a dollar of new or added debt results. The transaction is no different from what it would have been if there had been an exchange of bonds. There it is conceded there would have been no borrowing of money, and merely an extension of credit. But the actual result and the contemplated purpose are exactly the same under the second form of refunding as under the first, and I do not think the permission of the enabling act comes into collision with the prohibition of the charter. That prohibition had an obvious purpose and meaning. It was to restrain the creation of a debt, not the extension of one already existing; to prevent a new liability, not to postpone payment of an old one; to shield the taxpayers from the waste and danger of extravagant and needless appropriations, and not to obstruct the convenient and beneficial extension of a proper debt, lawfully incurred. * * * But I do not think that the refunding provision is within the spirit or intent of the charter prohibition. The object and purpose of the latter was to prevent something entirely different in substance and effect from that which the refunding act permitted, and the two statutes may be read together, and each perform its proper office, and accomplish its appropriate duty, without necessary collision or inconsistency."

In National Life Insurance Company v. Mead, 13 S. D. 37, 82 N. W. 78, 81, 48 L. R. A. 785, 79 Am. St. Rep. 876, the court said:

"Where the proceeds of funding bonds are properly applied, the transaction may in form be a borrowing of money, but in substance it is, not different from what it would be had there been an exchange of bonds for other evidences of debt. The contemplated purpose and actual result are the same. The municipal liability is not increased, but merely suffered to remain. City of Poughkeepsie

v. Quintard, supra. The argument that the indebtedness is instantly increased by the delivery of funding bonds, unless an equal amount of outstanding obligations is thereby extinguished, is without force where, as in this jurisdiction, available resources or assets may be considered in determining when additional indebtedness is created. [Citing cases.] The delivery of funding bonds, when sold at par, operates as an exchange of paper promises to pay for an equal amount of money instantly available for the extinguishment of an equal amount of other promises to pay. Assuming that this money remains in the treasury until used for the purpose intended, there is no moment of time when the financial condition of the city is in any substantial manner affected. Notice to holders of matured obligations stops the running of interest, and the city, with the proceeds of its funding bonds on hand, is in as good position as it would be if in possession of the evidences of its paid obligations duly canceled. If the proceeds be misapplied, of course the debt will be increased. * * * May not the other method produce equally serious consequences? Should the officer authorized to exchange new for old bonds, disregarding his official duty, accept money instead of outstanding obligations, and should the bonds thus placed upon the market fall into the hands of bona fide purchasers, the city debt would be increased or innocent parties made to suffer. Extravagant or corrupt officers may successfully employ either method to increase taxation or defraud bona fide creditors. * * * The legitimate object of issuing funding bonds is to meet the demands of creditors entitled to payment, or to reduce the interest on fundable obligations. By the terms of such obligations the city may have a right to pay, but cannot compel an exchange for bonds bearing a less rate of interest, and where the constitutional limit has been reached or passed, if the exchange method only is permitted, a reduction of interest is impossible."

In Citrus Growers Development Association v. Salt River Valley Water Users Association, 34 Ariz. 495, 268 P. 773, 780, the court in referring to the Doon case said:

"This case has been followed in several jurisdictions. * * * The weight of authority, however, is contrary to the doctrine laid down in the Doon case. That case was decided by a divided court, and the dissenting opinion has generally been followed. The majority rule is apparently based upon two propositions. * * * it is

urged, first, that it is presumed that the officers of a corporation will do their duty and apply the proceeds of the second bond issue to the indebtedness to be refunded; and, second, that the contrary rule would in many cases make it impossible to refund the debts of a corporation. [Citing cases.] * * * The question is not entirely free from difficulty. We are inclined, however, to believe the majority rule is the best founded on reason. The purpose of constitutional * * * provisions limiting the indebtedness of corporations is obviously the confining such indebtedness within prescribed limits, and not the prevention of the embezzlement or misappropriation of corporate funds; nor are we to assume that corporate officers are always or even usually dishonest. The contrary is to be presumed by a court. * * * Such being the case, if the proceeds of funding bonds are properly applied, and the presumption is that they will be, the transaction may be in form an increase of indebtedness, but, in substance it is not different from what it would be had there been an actual exchange of the new bonds for the old. The contemplated purpose and actual result are the same. The corporate liability is not increased, but merely suffered to remain as it was. The purpose of a constitutional provision * * * is always to be considered in determining its true meaning, and we hold, therefore, that where bonds are issued * * * for the purpose of refunding other outstanding indebtedness, and where the proceeds of such refunding bonds are placed in a trust fund for the sole and express purpose of paying off the original indebtedness, the latter bonds, so far as the amount which is placed in the trust fund is concerned, are not to be considered as an increase in the indebtedness of the corporation within charter and statutory provisions limiting it."

In Veatch v. City of Moscow, 18 Idaho 313, 109 P. 722, 723, 21 Ann. Cas. 1332, the court said:

"The whole trouble upon this question is occasioned by the decision of the Supreme Court of the United States in Doon Township v. Cummins, supra. Aside from that case, the decisions upon this question from the courts of last resort in this country are almost unanimous against the rule laid down in that case. The majority opinion in that case is to the effect that the issue of refunding bonds does increase the indebtedness of a municipality, and is in conflict with that provision of the Iowa state Constitution prohibit-

ing the creation of indebtedness beyond a certain limit. The courts have almost unanimously refused to follow the rule in that case, and it will be observed that there was a vigorous dissenting opinion therein written by Mr. Justice Brown and concurred in by Justices Harlan and Brewer, and the reasoning contained in the dissenting opinion seems to commend itself to the state courts of last resort, rather than that of the majority opinion. The majority opinion in that case establishes a rule that would make it impossible in many cases to refund indebtedness, and we do not think it was the intention of the framers of our constitution to prevent the refunding of an existing indebtedness when such refunding does not increase the liability or indebtedness of the municipality. This court held in Butler v. City of Lewiston, 11 Idaho 393, 83 P. 234, as follows: 'The bonds proposed to be issued are to be issued for the purpose of funding the outstanding warrant indebtedness of the city. Such bonds will not increase the legal indebtedness of the city, but simply change the form of existing indebtedness from warrant to bond.' "

It is apparent from a consideration of these cases that a majority of the courts in the United States have refused to follow the rule announced in Doon Township v. Cummins, 142 U. S. 366, 12 S. Ct. 220, 35 L. Ed. 1044. It is also apparent that in the cases sustaining the minority rule sufficient consideration was not given to the fact that the total indebtedness of the municipal corporation should have been reduced by deducting the cash received from the sale of the new bonds in the manner proposed from the total aggregate indebtedness of the corporation, in determining its indebtedness within the meaning of the constitutional provision. It is also apparent that in the minority cases sufficient consideration was not given to the fact that no new debt was created.

The new Iowa statute provides that the funds received from the sale of new bonds be placed in a separate account and/or special trust fund deposit, and held for the retirement of an equal amount of certain designated, outstanding, primary county road bonds. That when this is done, "such fund shall be regarded as sinking funds and shall be computed as an off-set against indebtedness of said county represented by such particular designated bond. The issuance of primary road refunding bonds by any county, and the conversion of the proceeds thereof into a special account and/or special trust fund deposit, shall not be regarded as the incurring of an indebtedness by such county within the meaning of any constitu-

tional or statutory limitation." That the fund in said separate account or special trust fund deposit *shall be used solely for the purpose of paying off the old bonded indebtedness* is further provided in the statute as follows:

"No withdrawal shall be made from said separate account or said special trust fund deposit except in payment for interest on or principal of primary road bonds  *  *  *."

These provisions of the new act are mandatory and prevent the funds from being applied to any other use than the payment and cancellation of the old bonds.

It is our conclusion that the issue and sale of refunding bonds to pay off an equal amount of primary county road bonds out of the proceeds of the sale of the new bonds does not create a new indebtedness, but simply changes the form of the old debt. It is in effect a renewal of the old indebtedness, payable to a new debtor at a lower rate of interest, but remains the same old debt. If the provisions of the present statute are carried out by the officers, the old bonds must be paid out of the proceeds of the sale of the new issue, and the indebtedness of Clarke county will remain exactly the same as before.

·A renewal of the old indebtedness in a new form under the plan proposed is, in substance, and effect, the same as a funding of the old bonds by exchanging them for new. Unless such a procedure is recognized, it will in many cases be impossible to refund outstanding bonds. The new statute makes it possible for municipal corporations to renew their indebtedness in the same manner in which private debts are renewed in almost everyday commercial transactions. We are inclined to believe that the majority rule upon this question as announced by the authorities herein above cited is the best. We are therefore constrained to hold, after careful consideration of the debt limit provision of our constitution, that the issuance of new bonds for the purpose of refunding certain old bonds in the manner proposed in this action does not create a new debt within the debt limit provisions of the constitution.

The purpose of the debt limit provision of the constitution is to confine the indebtedness of municipal corporations within certain limits, and not in prevention of the renewal of an old debt, or in prevention of embezzlement or misappropriation of corporate funds by public officers. We are inclined to hold that public officers

are entitled to the presumption that they will perform their duties as required by law. If, therefore, the proceeds of the refunding bonds are properly applied, and the presumption is that they will be, the transaction will not result in an increase of the indebtedness but will have the same effect as though there had been an actual exchange of the new bonds for the old. In such event, the corporate indebtedness will not be any greater than it was before.

We believe the lower court was right in so holding and its judgment and decree is hereby affirmed. So far as the decision of Reynolds v. Lyon County, 121 Iowa 733, 96 N. W. 1096, is in conflict with the views herein expressed, that case is hereby overruled. —Affirmed.

ANDERSON, C. J., and DONEGAN, PARSONS, HAMILTON, and RICHARDS, JJ., concur.

POWERS and MITCHELL, JJ. (specially concurring)—We concur in the result in the above-entitled case and so much of the reasoning of the opinion as holds that the procedure under the statute requiring the proceeds of the new bonds to be held in a special trust account for the payment of the old is in effect substantially the same as the exchange of the new bonds for the old.