SUN PIPE LINE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 98764. Promulgated November 29, 1940.

*C. J. McGuire, Esq.*, and *W. C. Magathan, Esq.*, for the petitioner. *Brooks Fullerton, Esq.*, for the respondent.

OPINION.

DISNEY: Stated tersely, the problem for solution here is whether section 351 (b) (2) (B) of the Revenue Act of 1936, as amended by section 355 (b) of the Revenue Act of 1937,[1] by the phrase "indebtedness incurred prior to January 1, 1934", was intended to cover indebtedness which existed prior to that date in the form of debentures and was retired after the crucial date, new bonds being issued for cash and the proceeds being used to retire the old debentures. In a word, the facts before us are that 5 percent bonds were issued in 1930 to certain parties and were retired in 1934 with the proceeds of a 3½ percent bond issue sold to parties other than those holding the issue of 1930, though the trustee was the same for both issues. In 1937 it redeemed the 3½ percent bonds and deducted the amount of such redemption from its undistributed adjusted net income, acting under the provisions of section 351 (b) (2) (B) of the Revenue Act of 1936, as amended by section 355 (b) of the Revenue Act of 1937. The Commissioner denied such deduction.

The question is one of first impression. The petitioner cites no case specifically considering the point here raised, and the respondent

---

[1] SEC. 355. UNDISTRIBUTED ADJUSTED NET INCOME.

For the purposes of this title the term "undistributed adjusted net income" means the adjusted net income (as defined in section 356) minus—

\* \* \* \* \* \* \*

(b) Amounts used or irrevocably set aside to pay or to retire indebtedness of any kind incurred prior to January 1, 1934, if such amounts are reasonable with reference to the size and terms of such indebtedness.

agrees that there is no authority exactly in point, though he adduces and relies upon certain cases as embodying the principle properly to be applied here.

After much study of this vexing problem, we have concluded that Congress did not intend to deny credit for payments upon indebtedness which represents an actual, though not a technical, continuance of indebtedness existing prior to January 1, 1934. The statute originated in section 351 of the Revenue Act of 1934, where the language used was identical with that in the 1936 Act. Of this statute, the Senate Finance Committee report said:

\* \* \* Considerable hardship has been avoided by permitting the deduction from the adjusted net income of a reasonable amount used or set aside to retire indebtedness incurred prior to January 1, 1934. This will substantially and properly relieve personally owned corporations which have outstanding bonds or other indebtedness that must be met from current earnings before distributions can be made.

The requirement spoken of by the committee, "that must be met from current earnings before distributions can be made", seems to apply alike to "bonds or other indebtedness" already issued on the effective date, and those with which the original issue is supplanted, but where the economic position of the taxpayer is not altered. We think that no distinction was intended between a corporation which after the date set, changes the form of its obligation, even changes the obligee, but remains equally obligated, and one which merely remains bound by the original obligation. True, the statutory date must be given meaning and effect, but we think this is reasonably done and Congressional intent accomplished by denying credit to indebtedness which is *new* in an economic sense to the taxpayer, i. e., does not merely take the place of indebtedness existing prior to the effective date. This seems to be the thought behind the language of the Ways and Means Committee Report on the Revenue Act of 1937 when, denying a recommendation that the credit for retirement of indebtedness provision be repealed, it said:

\* \* \* While recognizing the reasons which impelled the joint committee to make this recommendation, your committee feels, from further study of the question, that the denial of this deduction would cause hardship in numerous cases where, due to the particular circumstances of the corporation, a dividend distribution can not be made because of a necessity for legal reasons of using the earnings and profits to discharge the debts. Moreover, any loss of revenue caused by the continued allowance of this deduction can not increase, since indebtedness incurred after 1933 can not be used as a basis for the deduction. *No corporation can be formed for the purpose of taking advantage of this deduction.* Furthermore, it is inevitable that the revenue loss must decrease as pre-1934 debts are retired. \* \* \* [Italics supplied.]

The Committee seemed to think that if "pre-1934 debts are retired" and new corporations for taking advantage of the deduction pre-

vented, justice will be subserved. The intent in our opinion was to prevent further incorporating of the pocketbook, but not to affect those incorporations already existing. Here the incorporation of pocketbook was done when the corporation was formed and the original bonds were issued, not when the state of indebtedness was continued in a slightly different form. In *Commissioner* v. *Tennessee Co.*, 111 Fed. (2d) 678, the court considered the question whether "indebtedness" included indebtedness contingent at the effective date set by the act. After pointing out that the word "indebtedness" has both a strict and a broad meaning, the court came to the conclusion that a broad implication was required by the act and stated that "the operation of the statute is 'cushioned' so as to make it prospective in case of debt retirement payments", and though the court was of the opinion that the kind of debt in the case considered was one "most calculated to accomplish avoidance", nevertheless upheld the deduction, saying: "So we must await the happy day when pre-1934 indebtednesses are finally extinguished."

The Revenue Act of 1936 provides, in section 351 (b) (3) (B), that credit shall be allowed for certain contributions or gifts:

* * * including, in the case of a corporation organized prior to January 1, 1936, to take over the assets and liabilities of the estate of a decedent, amounts paid in liquidation of any liability of the corporation based on the liability of the decedent to make any such contribution or gift, to the extent such liability of the decedent existed prior to January 1, 1934; * * *

The case of such corporation was new in the act. Commenting on the inclusion thereof, the Report of the Conference Committee says:

Contributions or gifts to charitable organizations pledged by an individual who died prior to January 1, 1936, and assumed by a corporation organized to take over the assets and liabilities of the estate of such decedent after that date are allowed as a deduction in computing the adjusted net income for the purposes of this tax. This deduction seems meritorious, for the liabilities assumed by the corporation are with respect to gifts going to charitable organizations and were actually incurred prior to January 1, 1936, but due to the delay in the organization of the corporation were not actually incurred by the corporation as such until after that date.

It would seem from such language that there was Congressional intent not to exclude from credit, where the debt was not "actually incurred" after the effective date, but represented indebtedness existing prior thereto; and that such thought applies equally in case of new bonds to take up those prior to the date involved.

The question as to what constitutes the incurrence of indebtedness has received the attention of the courts in connection with municipal bond issues in excess of constitutional or statutory limits. Though there are decisions to the contrary, the weight of authority is that a

bond issue which of itself would be void, as contravening such constitutional limit beyond which the municipality might not become indebted, is not void if the bonds are exchanged for, or their proceeds are used to take up, a previous valid issue. Here that is true to the extent of $3,500,000 and not true as to $500,000. Obviously any claim for deduction from adjusted net income must be and is denied to the extent of $500,000, since that amount may, so far as the record herein shows, represent the retirement of bonds the proceeds of which went to the new purpose of laying a pipe line. However, petitioner, though it set up a claim in its return and petition for credit of $3,400,000, is in effect asking only for a credit of $67,045.49, since only that amount is necessary to eliminate the deficiency set up. Petitioner's adjusted net income was returned as, and by the respondent found to be, $1,307,845.49. Dividends paid credit allowed in the amount of $1,240,000 leaves undistributed adjusted net income of $67,045.49. Therefore that amount of deduction out of the $3,400,000 claimed would eliminate any deficiency. The debentures discharged in 1937 were to the extent of $67,045.49 retired from petitioner's income of that year, and were not paid with borrowed money or replaced by substituted indebtedness.

In *Aetna Life Insurance Co.* v. *Lyon County, Iowa*, 82 Fed. 929, the issuance and sale of bonds by a county for the purpose of discharging outstanding indebtedness, executed pursuant to statute, was held not to *create a debt* within the meaning of a constitutional debt limitation. The controlling thought was that the actual indebtedness was not increased.

In *City of Huron* v. *Second Ward Savings Bank*, 86 Fed. 272, it was held, considering bonds in the territory of Dakota, that "Bonds which are issued to fund a valid indebtedness neither create any debt nor increase the debt of the municipality which issues them. They merely change the form of an existing indebtedness." The organic law of the territory of Dakota provided that "no municipal corporation should ever become indebted exceeding 4 per centum on the value of the taxable property within such corporation." The bonds were sold and the proceeds applied to pay warrants.

In *City of Los Angeles* v. *Teed*, 44 Pac. 580, this question was considered. The California Constitution, article 11, § 18, forbids any city to "incur any indebtedness or liability in any manner, or for any purpose, exceeding in any year the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors * * *." The court said: "* * * merely to fund or refund an existing debt is not to 'incur an indebtedness or liability.' A bond is not an indebtedness or liability; it is only the evidence or

representative of an indebtedness. And a mere change in the form of the evidence of indebtedness is not the creation of a new indebtedness within the meaning of the constitution [citing cases]."

In *City of Poughkeepsie* v. *Quintard*, 32 N. E. 764, the Court of Appeals of New York interpreted a statute providing that a city council shall not "create" any obligation not payable in the current year. Bonds were sold and the proceeds used to pay prior bonds. It was said: "There is a new creditor, and a reduced rate of interest, but the same old debt. The municipal liability is not increased, but merely suffered to remain; and not a dollar of new or added debt results."

The respondent cites *Helvering* v. *California Oregon Power Co.*, 75 Fed. (2d) 644, and cases to the same effect, that is, that where one bond issue is issued at a discount and expense incurred, the amount of expense and discount amortized and new bonds later issued to a different creditor, in retirement of the earlier issue, the portion of the discount and expense of the old bond issue unamortized at the date of the new issue was properly deducted in the year of the new issue, and not amortized over the life of the later bond issue. It was there held that "the two bond issues were not interrelated in any legal sense, but were in fact substantially separate transactions and should be so treated." We think, however, that from such treatment, for the purpose of that case, it does not follow that the treatment must be the same here and that the new bonds represented "indebtedness incurred" after the crucial date. Though there the bond issues were separate for purposes of considering expense and discount, and such expense of the first issue logically was deductible only when it was closed, upon the question herein presented the indebtedness involved in the second was that involved in the first, under the above cases.

Being unable to distinguish the instant situation in principle from the cases above reviewed to the effect that indebtedness is not incurred by new bonds with the proceeds of which an old issue is retired, we conclude and hold that there was error in the denial of the deduction under section 351 (b) (2) (B) of the Revenue Act of 1936, to the extent of $67,045.49. This is obviously "reasonable with reference to the size and terms" of the indebtedness of $3,500,000, and the requirement of paying $400,000 in 1937, within the requirement of section 351 (b) (2) (B) of the Revenue Act of 1936, as amended, and we so hold.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

STERNHAGEN dissents.