General Plastics, Inc., Durez Plastics & Chemicals, Inc., Successor v. Commissioner.
General Plastics, Inc. v. Commissioner
Docket No. 111209.
United States Tax Court
1943 Tax Ct. Memo LEXIS 122; 2 T.C.M. (CCH) 767; T.C.M. (RIA) 43417; September 9, 1943
*122 Taxpayer, being indebted to a bank in the sum of $400,000, repaid this amount by delivering its check to the bank, but on the same day it borrowed $500,000 from the same bank. Held, the transaction was in effect a renewal and increase of the debt rather than a payment of indebtedness within the meaning of section 27(a)(4) of the Internal Revenue Code. Harry Abt, C.P.A., 420 Genesee Bldg., Buffalo, N. Y., for the petitioner. Henry J. Merry, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion The Commissioner determined an income tax deficiency in the amount of $5,956.36 for the calendar year 1939, and petitioner claims an over-payment for the same year in the sum of $47.20. The issue is whether an indebtedness, for the purpose of a dividends paid credit, was paid in the tax year or, on the other hand, was merely renewed. The return of General Plastics, Inc. was filed in the 28th district of New York. Findings of Fact Durez Plastics & Chemicals, Inc. is a New York corporation organized on August 7, 1939. On September 1, 1939 it consolidated with another New York corporation, General Plastics, Inc., and became the surviving constituent corporation in *123 accordance with the laws of New York. It is liable for any deficiency that may be determined against General Plastics, Inc. The latter company will be referred to herein as the taxpayer. Pursuant to a written agreement dated September 13, 1937, the taxpayer on that date borrowed $500,000 from The Marine Trust Co. of Buffalo, New York, which amount was placed to its credit in a checking account maintained at said bank. The taxpayer delivered to the bank on that date its ten notes of $50,000 each, maturing semiannually on March 15 and September 15 from 1938 to 1942, inclusive. The notes carried interest of 4 per cent, and the written agreement, to which reference was made on the face of each note, gave the taxpayer the privilege on any interest date (March 15 and September 15) to anticipate payment in whole or in part by prepayment of the principal, without penalty or premium. The indebtedness represented by this loan stood at $500,000 on December 31, 1937. The two notes maturing in 1938 were paid when due, leaving a balance of $400,000 owing at the close of 1938. In 1937 the taxpayer began construction of a plant that would cost approximately $2,300,000, and it was at that time that *124 the taxpayer borrowed $500,000 from The Marine Trust Co. Early in 1939 it was determined that additional funds were required. The taxpayer intended to sell a public issue of bonds to underwriters to provide the necessary funds to complete the $ plant and for other purposes, but it was not ready in the spring of 1939 to complete an underwriting agreement. Consequently, arrangements were made on February 15, 1939 for a further loan from The Marine Trust Co., with the thought in mind that bonds would thereafter be issued. The arrangements took the form of a written agreement dated February 15, 1939, under the terms of which The Marine Trust Co. agreed to loan the taxpayer $500,000 on March 15, 1939, and to accept as evidence thereof nine notes, which the taxpayer agreed to execute, the notes to carry 4 per cent interest. The first note was to be in the sum of $100,000 and mature March 15, 1940, and the remainder in the amount of $50,000 each maturing on September 15 and March 15 from 1940 to 1944, inclusive. This agreement provided that the taxpayer could anticipate payment of principal at any time, but that if a prepayment were made prior to March 15, 1940, a premium of 1/2 of 1 per *125 cent of the amount so paid would be required and if between that date and March 15, 1941, a premium of 1/4th of 1 per cent would be required. This agreement made no reference to the agreement executed on September 13, 1937 nor to the indebtedness of $400,000 then outstanding, nor did it specifically require the payment of the $400,000 on the old loan out of the proceeds of the new loan. On March 15, 1939, the taxpayer delivered its check to The Marine Trust Co. in the sum of $400,000. In the checking account in that bank, upon which said check was drawn, there was a credit balance of $300,000 at the opening of business on March 15, 1939. The old notes in the amount of $400,000 were stamped by the bank "Paid" and returned to the taxpayer. On the same day the taxpayer executed its nine notes aggregating $500,000, in accordance with the agreement of February 15, 1939, and delivered them to the bank. The bank, on March 15, 1939, posted on petitioner's checking account the $400,000 check as a debit and $500,000, the amount of the new loan, as a credit, leaving a credit balance at the close of business on March 15, 1939 of $400,000. Both the bank and the taxpayer made entries on their *126 books recording the transaction as a payment of the old notes in the amount of $400,000 and the incurring of a new loan in the aggregate amount of $500,000. It was the bank's custom to return all notes, whether renewed or paid, and renewed notes were stamped "renewed" while paid notes were stamped "paid". Opinion ARUNDELL, Judge: The dividends paid credit includes, in section 27 (a) (4), "Amounts used * * * to pay or to retire indebtedness * * *." To qualify for the credit the indebtedness must have been in existence on December 31, 1937. This requirement is met in the present case, and the sole question is whether the amount of $400,000 was used to pay or retire that indebtedness. Petitioner argues in the affirmative because a check in that amount was delivered to the creditor bank and honored by it and each party recorded the action on its books as a payment. It is argued that the intent of the parties must govern and that such intent is to be drawn from the above facts demonstrating payment. In petitioner's view it is immaterial that on the same day (though after the above "payment," as petitioner alleges) the taxpayer borrowed not only the same amount but an additional $100,000 *127 from the same bank, so that at the end of the day it had more cash on hand than at the beginning and was indebted in a larger amount to the same creditor. Respondent, of course, takes the position that the transaction in fact and substance was a renewal and an increase in the amount of the obligation rather than a payment. In our opinion the Commissioner's action in denying the credit was correct. There can be no doubt that in actual mechanical form the transaction was a payment and a new loan. But we think the case is not to be governed by these formal elements nor the intent of the parties drawn therefrom. The rule that actualities and not form should control was stated by the New York Court of Appeals as follows, in City of Poughkeepsie v. Quintard, 136 N. Y. 275, 32 N.E. 764: * * * It must be conceded that the transaction in form may be a borrowing of money, but, in substance, it is the very different case of refunding an existing debt. There is a new creditor, and a reduced rate of interest, but the same old debt. * * *. It appears here from the testimony that the taxpayer was in need of capital; that it had borrowed funds in *128 1937 and needed more in 1939 to carry it until a public bond issue in a much greater amount could be floated. In this situation it is obvious that it would not have paid its original notes long before maturity, thereby depriving itself of needed funds, unless it could borrow the same or a larger amount from the same creditor or elsewhere. This it had already arranged to do and in fact the new loan was in a larger amount, reflecting the need of additional funds, and was executed the very day of the alleged payment of the old. We think the taxpayer's intent was that the old loan would be replaced by the new. In this view the case is governed by the holdings in Commissioner v. Grant Trading Co., Inc., 135 Fed. (2d) 358; Phillips, Inc. v. Commissioner, 134 Fed. (2d) 73; Commissioner v. Sun Pipe Line Co., 126 Fed. (2d) 888, affirming 42 B.T.A. 1413 and 43 B.T.A. 770. These cases hold that even where bonds are sold to new creditors and the proceeds used to pay or retire old bonds in the hands of different creditors, the indebtedness represented *129 by the new bonds is nevertheless the same indebtedness and the credit is allowable at the time the new bonds are subsequently paid and retired. As the Board said in Sun Pipe Line Co., supra, at p. 1417: * * * True, the statutory date must be given meaning and effect, but we think this is reasonably done and Congressional intent accomplished by denying credit to indebtedness which is new in an economic sense to the taxpayer, i.e., does not merely take the place of indebtedness existing prior to the effective date. * * * In the instant case the same creditor is involved and a fortiori the indebtedness represented by the new notes was not new in an economic sense. We have no doubt under the cited cases that petitioner would have been entitled to the credit upon retirement of such new notes. It necessarily follows that the old indebtedness was not paid or retired at the time of the refinancing. [1] We think it immaterial that the second loan agreement did not refer to the first or require that the proceeds be used in part to retire the outstanding notes. In none of the cited cases did the decision turn on whether there was such a requirement. The important factor is that *130 the taxpayer, having borrowed or being about to borrow $500,000, was thereby in a position to retire the earlier obligation which it otherwise would not have done. Consequently, the new borrowing was the cause of the payment of the old, which appears to us to be the significant factor in demonstrating that the new indebtedness is not new in any economic sense, but a replacement and continuation of the old. Petitioner may not make into two separate and unrelated debts what is in reality one. Respondent's determination is accordingly sustained. Decision will be entered for the respondent. Footnotes
1. Regulations 103, section 19.27 (a)-3 (a): * * * if the creditor remains the same and the transaction is in effect a renewal, the mere fact that it takes the form of a new borrowing, the proceeds of which are simultaneously used to discharge the prior obligation, will not of itself prevent the transaction from being a renewal within the meaning of section 27 (a) (4)↩ and this section.